## Farmers' Mutual Insurance Co. *versus* Wenger.

The by-laws of a mutual insurance company provided that the liability of a member should continue, until the cancellation of his policy and the erasure of his name from the books of the company. *Held,* that the company was relieved from liability for a loss by fire after a voluntary surrender of his policy by a holder, without a formal cancellation of the same and the erasure of his name from the books of the company.

May 9th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, of *Lancaster county :* Of May Term 1879, No. 30:

Covenant by John Wenger against the Farmers' Mutual Insurance Company, on a policy of fire insurance. Defendant pleaded *non est factum,* covenants performed, *absque hoc.*

It appeared that in 1870, the company issued a policy to Wenger on certain premises in Lancaster county. All the assessments of Wenger were paid up to May 1876. A short time previous, the company becoming impressed with the fact that it had taken risks upon too high a valuation of properties, a committee was appointed to ascertain, value and adjust the risks. One of these properties was Wenger's, whereon the risk was reduced from $525 to $300. On the 26th of May 1876, when informed of the action of the company by its secretary, Mr. Strohm, Wenger expressed his dissatisfaction, and declared he would leave the company. Strohm replied, "he could do so at any time, by paying up the arrears of his assessment and surrendering his policy." Wenger asked Strohm "whether he should bring the policy and money to his place," to which Strohm replied, " I can save you that trip; I have some business with Jacob Hoffman, and if you will leave the policy and money with Hoffman I will get it there," the understanding being, at that time, said Strohm, " that I should consider the surrender of the policy to Hoffman the same as if it had been surrendered to me."

In pursuance of this conversation and the understanding of the parties, "the latter end of May or the beginning of June," Wenger delivered to Hoffman the policy of insurance and the arrearages of his assessment between $2.50 and $3, and requested him to give the same to Strohm, who was to call for them. Hoffman said, "he put the money and policy away, intending to give it to Strohm when he called for it. Wenger told me to do so with the policy and money." The policy still remained with Hoffman on July 4th 1876, when the property was destroyed by fire. It appeared that at this time the name of Wenger still remained upon the books of the company.

Among the by-laws of the company were the following:

Sect. 1. * * * The insurance shall be considered perpetual, unless a limited time is specified in the policy, subject to adjustment when either the managers or the owner shall desire it; any one may withdraw from the company at the end of the year, not being in arrears.

Sect. 5. The directors shall provide suitable books, wherein the secretary shall write the names of the members, with a specification of their property, designating each building, also its contents (if insured), with the distance from each other, and the respective valuation at which they are insured; when subject to extra taxation, the rate thereof shall be entered and the equivalent taxable carried out. An entry of the withdrawal or expulsion of a member shall also be made on the books. The secretary shall furnish each member with a transcript of his entry, if demanded.

Sect. 6. The liabilities of members shall commence and terminate at 12 o'clock on the day on which their names are entered, withdrawn or erased.

The plaintiff submitted the following point, to which is appended the answer of the court:

If the jury believe that the plaintiff's policy had not been cancelled and his name erased from the books of the company before his property was destroyed by fire, the company was liable at the time of the destruction of the property, and their verdict must be for the plaintiff.

Ans. "If you believe that the plaintiff's policy had not been cancelled and his name erased from the books of the company before his property was destroyed by fire, and believe also that it was the understanding between Mr. Strohm and the plaintiff that if he left the policy and assessment money with Mr. Hoffman, and he, Mr. Strohm, getting the same from Hoffman, would then result in the surrender or cancellation of the policy, then your verdict must be for the plaintiff."

In the general charge, the court, Patterson, J., inter alia, said:

"Those sections, of course, are part of the law of this company, and very properly designate the distinct time at which a party

[Farmers' Mutual Ins. Co. *v.* Wenger.]

insured or his policy would terminate, and the exact moment of time of day at which the company itself would incur or be relieved from any liability, and when the liability of the insured shall terminate by their names being withdrawn or erased.

" Those sections show that there is a very considerable significance to be put upon the condition of the books of the company, the names of the persons entered there, and also whether those names are erased or withdrawn, and when.

" * * * The evidence is indisputable that the plaintiff's name was on the books when this fire occurred, and that it is on the books yet, and that being so, according to terms of their charter and the by-laws, he was liable to any assessment, so long as his name remained there. * * *

" Therefore, the surrender should be enforced against the insured when seeking to recover the amount insured and contained in the policy, only when there is the clearest evidence that the policy was actually surrendered according to the understanding or stipulations of both parties."

Verdict for plaintiff for $586.31.   After judgment thereon, the defendant took this writ, and, inter alia, assigned for error the answer to the above point and the portions of the charge noted.

*S. H. Reynolds,* for plaintiff in error.

*D. G. Eshleman,* for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, June 2d 1879.·

According to the testimony of John Strohm, the secretary of the defendant company, he called on Wenger, the plaintiff below, on the 26th of May 1876, for the purpose of collecting an assessment then due, and he then informed him that the company had inaugurated measures for the reduction of the valuation of certain properties, among which was his own, upon which the company held risks. That it was desired that the risk on his barn should be reduced from $525 to $300.   Wenger expressed his dissatisfaction with this, and the conduct of the directors generally, and said he would go out of the company.   Strohm. then told him he could do so at any time by surrendering his policy and paying up the assessments due.   It was then arranged, in order to save Wenger a trip to Strohm's place of residence, that he, Wenger, should leave the money, necessary to meet the assessments and the policy, with Jacob Hoffman.   A few days afterwards, in the latter part of May or beginning of June, if the evidence of Hoffman be true, the plaintiff handed the money and policy to him with directions to hand them over to Strohm.   As both parties had previously agreed that this deposit should be made with Hoffman for the company,

[Farmers' Mutual Ins. Co. v. Wenger.]

there is no question but that it was equivalent to a payment and surrender to the secretary himself. Now, one would suppose, from this statement of facts, that this was the end of this contract of insurance, and, so doubtless, it would have been had not the plaintiff's barn burned in the month of July following. Certainly, there was no reason why this should not be so. The company proposed to reduce the amount of the risk; the plaintiff refused to continue his insurance if this were done; the result was the agreement to surrender the policy. The parties were competent to contract; the consideration was good and sufficient, and surrender was made according to the agreement.

To this, however, the court objected, section sixth of the company's by-laws, which reads: " The liabilities of members shall commence and terminate at twelve o'clock on the day on which their names are entered, withdrawn or erased," and held, that as the plaintiff's name was not erased from the defendant's books, his liability for future assessments continued, and if he were not released neither was the company. In other words, the contract for the surrender of the policy was of no force until the plaintiff's name was withdrawn from the books. This was a mistake; Wenger had nothing to do with the books; if he complied with his part of the contract by a surrender of his policy, which, of course, meant a release of the company, he had nothing more to do, and he was as effectually released from all future obligations to the company as though his name had never been on its books. Certainly, in such case, the defendant could not set up, as against him, that it had neglected that which it had agreed to do. If, as in the case of the Columbia Insurance Co. v. Masonheimer, 26 P. F. Smith 138, the letter of the secretary of the company informing the insured that his policy had been cancelled, when, in fact, such was not the case, sufficed to release him, much more would the solemn contract of the parties, fully executed except as to a mere formality on part of the company, have the effect to produce that result. Furthermore, the court made a mistake in supposing there was anything resembling a forfeiture in this case. The transaction between the parties was one of contract, and by the terms of that contract their several rights are to be tried, hence there is no room for the interposition of a forfeiture. It follows that the first five assignments of error must be sustained. The others are dismissed as being without merit.

The judgment is reversed, and a *venire facias de novo* ordered.