### NORTHERN ASSUR. CO. v. STANDARD LEATHER CO.

(Circuit Court of Appeals, Third Circuit. November 21, 1908.)

#### No. 1, March Term, 1908.

1. INSURANCE (§ 229*)—CANCELLATION OF POLICY—NOTICE TO AGENT.

Plaintiff gave a firm of insurance brokers general authority to procure for it insurance to the amount of $75,000 on its manufacturing plant to replace prior insurance at better rates and terms. In pursuance of this employment the brokers applied to the local agents of a number of companies, some of whom, among them the agent of defendant, issued policies, each in the amount of $2,500, the premiums being charged to the brokers to whom the policies were delivered. On receiving the report of the risk defendant instructed its agent to cancel the policy, and he gave the brokers, who still retained it, notice of cancellation in five days as required by its terms, and at the expiration of that time they surrendered it, as they did other policies similarly canceled, and proceded to obtain others in their stead. Before they had procured the requisite amount of insurance the property burned. *Held*, that in view of their general employment and its nature, and the fact that they were still acting in pursuance thereof, not having reported nor delivered the policies to plaintiff, the acceptance of defendant's notice of cancellation and the surrender of its policy were within the scope of their authority and terminated the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 500; Dec. Dig. § 229.*]

2. INSURANCE (§ 539*)—NOTICE OF LOSS—EXCUSE FOR DELAY.

Where an insurance policy requiring "immediate" notice of loss to be given the insurer was delivered to the authorized agents of the insured, the fact that they did not deliver the policy to their principal before the loss, nor notify it of the contract, did not relieve it from the obligation to comply with such condition, and a failure to give notice of the loss for 30 days avoided the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1334; Dec. Dig. § 539.*

Time for notice of loss, see note to Rorick v. Railway Officials & Employees' Acc. Ass'n, 55 C. C. A. 376.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 156 Fed. 689.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. H. Harrison, for plaintiff in error.

J. S. Ferguson, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

GRAY, Circuit Judge. This was a suit by the Standard Leather Company, the defendant in error and plaintiff below (hereinafter called the plaintiff), against the Northern Assurance Company, the plaintiff in error and defendant below (hereinafter called the defendant), upon a policy of insurance. The defendant interposed three grounds of defense, with only two of which we are here concerned, viz., first, that the policy was canceled by the assurance company before the fire; and second, that immediate notice of the fire was not given by the assured, in conformity with the stipulation in that behalf contained in the policy.

The facts of the case bearing upon the first ground are as follows:— Prior to May 31, 1904, the plaintiff employed the Negley & Clark Company, general insurance agents and brokers, to procure for it $75,000 insurance upon its plant at Cheswick, near Pittsburgh, in good companies, under a better form and at a lower rate than had previously been written. The instructions given by plaintiff to the brokers were general, and it sufficiently appears, both negatively and affirmatively, that the agents thus employed were clothed with discretion as to the companies to be selected, and with such authority as to the general conduct of the business as was necessary to accomplish the general purpose of their employment. Thereupon, in pursuance of this employment, they applied to the local agents of a number of companies for insurance upon the said property of the plaintiff. Some of these local agents "bound the risk" in their several companies early in June, 1904, and subsequently issued their respective policies thereon, all bearing date June 10, 1904. Among the policies so issued was the one here in question, issued by the defendant. The policies were identical in form, being what is known as the "New York Standard Policy," and each for the amount of $2,500. No premium was paid on behalf of the plaintiff to the companies, or their agents, issuing the policies, but the same was charged to the brokers representing the plaintiff. Subsequently, some of these local agents, among them the local agent of the defendant, upon reporting the risk to the home offices, received directions to cancel the policies, and in compliance therewith, gave notice of cancellation of their several policies to the Negley & Clark Company, the brokers or agents of the plaintiff, who had the policies in their possession and who were still engaged in trying to secure the aggregate amount of insurance desired by their principal on its said property. The notice of cancellation on behalf of the defendant was as follows:

"Negley & Clark Co., City:                    "Pittsburgh, June 25, '04.

"The Northern Assurance Co. desires to cancel their policy No. 24141 covering on property of Standard Leather Co., situate

"I herewith give you five days' notice as per terms and conditions of your policy (line 51 to line 55 inclusive), and you are hereby notified to return said policy to this office on or before the 30th day of June, 1904, at

twelve o'clock noon, when all liability on the part of this company will cease.

"By returning said policy to this office the pro rata unearned premium (if any) will be paid.

"Yours respectfully,                                H. T. Norris,
                                                        "Agent."

The stipulation of the policy referred to in the above notice, is as follows:

"This policy shall be cancelled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portions shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the pro rata premium."

It is admitted that the notice of cancellation given to Negley & Clark Company, as brokers or agents of the plaintiff, was the only notice given. The policy in question was never delivered to the plaintiff by the Negley & Clark Company, but, after the expiration of the five days mentioned in the notice, and some time before the fire, which occurred on July 12, 1904, it was surrendered to the defendant by the Negley & Clark Company, as were the policies issued by other companies from whom like notices had been received.

The learned judge of the court below, after stating in his charge to the jury that there was no dispute as to the facts substantially as above stated, said that the question "whether the insurance companies could cancel these policies by giving the notice to the brokers, and not to the insured, is a question of such importance * * * that the court does not feel warranted now in expressing any opinion upon its conclusions," and therefore reserved the said question, instructing the jury, that for the present, the policies were in full force and that the jury were to consider them, in determining their verdict, as if no cancellation had been made, or attempted to be made.

In considering this question, after the verdict in favor of the plaintiff and upon a motion, non obstante veredicto, under the Pennsylvania statute, the learned judge of the court below denied the motion of the defendant for judgment non obstante veredicto and directed judgment for the plaintiff on the verdict. In the course of his opinion, and as a ground for denying the motion, the court said:

"It is clear that in point of fact, the Negley & Clark Company were agents of the plaintiff, solely for the purpose of procuring insurance, for no express authority, verbal or written, authorizing any other act, is shown. When they procured such insurance, and the defendant's policy was delivered to them as the plaintiff's agent, they had, as between the plaintiff and defendant, carried out their agency."

In view of the situation disclosed by the undisputed evidence in this case, we think the learned judge of the court below erred in the position thus taken. It is true that no precise letter of instructions, or other written authority from the plaintiff to the Negley & Clark Company is shown, but there is no dispute as to the fact that the Negley & Clark Company were general insurance brokers, that they were employed by the plaintiff as its agents in the general line of their business, to pro-

cure new insurance to an aggregate amount of $75,000 on its manufacturing plant near Cheswick,—an employment which admittedly involved the surrender of over $30,000 of old insurance to be replaced by other policies, in better form and at less expense to the plaintiff. The scope of the authority thus conferred upon its agents was undoubtedly large enough to embrace all purposes connected with the business of placing the amount of insurance stated. Manifestly, as stated by Clark of the brokerage company, the whole business could not be transacted at one time, and the whole amount placed as desired, where the allotment to each company, of the aggregate amount of $75,000 was not more than $2,500. It necessarily involved a negotiation with the agents of the different companies, as testified to, the tentative binding of the risks and the contingency of the rejection by a company of the risk, when reported by its agent, and the substitution of other risks for those displaced, while the purpose of securing the aggregate amount was still unaccomplished. There is no suggestion that there was unreasonable delay on the part of the Negley & Clark Company in distributing this large amount of insurance. Clark testifies, and his testimony is nowhere contradicted, in answer to the question, "Did you succeed in placing the desired amount of $75,000?"

"I can't say that we had $75,000 at any one time; we had policies on and policies off, and I couldn't say as to just how much we had at any one particular time. We would get a policy, for instance, to-day, and maybe to-morrow, or a few days afterwards, we would get a notice of cancellation from the agent, or a letter or telephone message, or some other request for a return of that policy, and after holding the policy five days, because the policy provides five days, we would return it."

It plainly appears, then, that when the notice of cancellation was sent by the defendant to the Negley & Clark Company, the whole business committed to them by the plaintiff was in fieri, and the reception of such a notice seems to us, under the circumstances of this case, clearly within the scope of their authority, as representing the plaintiff. Whether they neglected their duty as to reporting such cancellations and other matters to their principal, does not in this case concern the defendant. The policies issued were, by the permission of the plaintiffs, in the possession of their agents, and it would seem that it was necessary for them to receive and act upon notices of cancellation, in order that other insurance might be obtained to replace that canceled. At all events, it appears as a fact that, when the fire occurred, there was only $39,500 of insurance in force, for which no cancellation had been given, although they had, from first to last, placed something over $100,000 insurance. There is no evidence to show that plaintiffs, by word or conduct, evidenced any other construction of the scope of the authority granted to their agent, than that above stated. We think, therefore, the power to receive and act on the notice of cancellation, sent to them by the defendant company, was, under the circumstances, within the scope of the authority conferred upon the Negley & Clark Company, by their employment as agents of the plaintiff.

Though not directly bearing upon the question of the scope of the agency in the case before us, it may be well to remark that under the situation, so far as it was admittedly created by the plaintiffs, the

policies were left in the possession of Negley & Clark Company, while the general purpose of procuring the amount of insurance required was being transacted, and that no notice of cancellation from the defendant company, directly to the plaintiffs, would have been of as much advantage to the latter, as was the notice actually given to the brokers who were transacting the business, and upon whom the duty devolved to procure other insurance in lieu of that canceled.

The point decided upon the peculiar facts of the case of Grace v. American Cent. Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932, apparently relied upon by the court below, does not seem applicable to the case before us. In the case referred to, a clerk of Grace & Co. was charged with the duty of effecting fire insurance upon their property. This clerk employed one Moyes, an insurance broker in the city of New York, to obtain the required insurance for his principals Moyes instructed one Anthony, another insurance broker in Brooklyn, to procure this insurance. Anthony obtained the policy in suit from the general agents of the defendant company, in New York City, mailed and delivered the same to Moyes, by whom it was delivered to Grace & Co. not later than the day succeeding its date, September 26th. On the morning of October 6th, one Carroll, for the insurance company, verbally notified Anthony that the company refused to carry the risk, and required the policy to be returned. The property insured was destroyed by fire on the night of October 6th, or early in the morning of October 7th. At the trial, it was admitted that the contract between the parties was fully executed upon the delivery of the policy to the insured. In this state of facts, the Supreme Court refused to rule that, because of the stipulation in the policy, "that any person other than the assured, who may have procured the insurance to be taken by this company, shall be deemed to be the agent of the assured," notice of the termination of the policy was properly given to Anthony, who personally procured the insurance. It is to be noted that Anthony's principal was the intermediate broker, Moyes, and that the policy in suit was delivered at once by Anthony to Moyes, who at once delivered it to the plaintiff. It would seem, therefore, that the court could not do otherwise than decide that Anthony's agency was at an end when the policy was procured and delivered to the plaintiff, under the circumstances and in the manner above stated.

Equally fatal to the plaintiff's case was the failure to give immediate notice of loss, as required by the policy. The fire occurred July 12, 1904, and the proofs of loss which were not sent in until August 11th, some 30 days afterwards, was the first attempt to comply with this requirement. This is an important provision, the obvious purpose of which is to enable the insurer, while the facts are fresh, to investigate the cause of the fire and the extent of the loss, and it is not to be frittered away by overindulgent construction favoring the assured, upon grounds which are purely personal. If, therefore, we were to agree with the plaintiff that the notice of cancellation given by the defendant to the Negley & Clark Company was not sufficient to accomplish its purpose, and that the policy in suit continued in force notwithstanding, yet Negley & Clark Company, being unquestionably authorized, as brokers and agents of the plaintiff, to procure the insurance and re-

ceive the policy on their behalf, the company having delivered the policy to one so authorized to receive it, had no further concern as to the manner in which such agent performed his duty, or whether he delivered the policy or not to the plaintiff, or kept him otherwise informed as to the execution of the contract between the plaintiff and defendant, all these being matters inter sese between the plaintiff and its agent. The performance of the stipulation of the policy, that the plaintiff should give immediate notice of any loss by fire, in writing, to the defendant, not having been waived by the defendant, could not therefore be excused by reason of any dereliction on the part of the Negley & Clark Company in delivering the policy to the plaintiff or in informing it of its existence. Such a reason alleged in excuse of the delay would be subjective as to the plaintiff and relate to matters for which the defendant was clearly in no way responsible. As the only excuse for not sending immediate notice of its loss to the defendant, urged by the plaintiff, is that the Negley & Clark Company had not informed them of the companies with whom insurance on plaintiff's behalf had been negotiated, we think that, as matter of law, the delay of more than 30 days in sending notice to the defendant, was violative of the condition precedent imposed upon the plaintiff, that immediate notice of loss should be sent. For this reason, we think that the prayer for peremptory instructions to the jury, in favor of the defendant, should have been granted.

The Pennsylvania act of assembly, of June 27, 1883 (P. L. 165), only makes more peremptory the conclusion at which we have arrived. Section 1 of that act provides that the—

"conditions of insurance as to notice of loss * * * shall be deemed to have been complied with, if the assured or the assignee, or either of them, shall furnish the company at its general office * * * the notice of loss within ten days from the date of the fire."

The Supreme Court of Pennsylvania, in Welsh v. London Assur. Corp., 151 Pa. 616, 25 Atl. 142, 31 Am. St. Rep. 786, speaking through Mr. Justice Mitchell, after referring to the cases of Trask v. Insurance Co., 29 Pa. 198, 72 Am. Dec. 622, and Edwards v. Ins. Co., 75 Pa. 378, said:

"But since these decisions, the Act of June 27, 1883, has practically given a legislative definition of reasonable time, by fixing the period of 10 days for notice of the fire."

The judgment below is therefore reversed.