# Standard Leather Company, Appellant, *v.* Insurance Company of North America.

*Insurance—Fire insurance—Principal and agent—Cancellation of policy—Notice to the insured.*

Where an agent of an insured is given general powers to place a large line of insurance in various companies with power to cancel policies and replace with other policies without special authority from the principal, to keep an expiration book for an indefinite period and correct the same every six months, such agent, so long as the line of insurance is not completed, is a proper person, to whom an insurance company may serve notice of cancellation of a policy of insurance procured by him for his principal; and the same rule applies even where the agent of the insured is also the agent of the insurance company.

Argued Jan. 19, 1909.    Appeals, Nos. 229, 231 and 232, Oct. T., 1908, by plaintiff, from judgments of C. P. No. 2, Allegheny Co., July T., 1905, Nos. 292, 298, 290, for defendants on case tried by the court without a jury in suit of Standard Leather Company of Pittsburg v. Insurance Company of North America, the Hartford Fire Insurance Company of Hartford, Conn., and the Spring Garden Insurance Company of Philadelphia.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Assumpsit on contracts of fire insurance.

The case was tried by the court without a jury by agreement of parties.

SHAFER, J. filed the following opinion:

This case, with about sixteen others, in which the same company is plaintiff against a number of other insurance companies, was tried by the court without a jury, a jury trial having been dispensed with by writing filed.    The cases were not all tried together, and the present case, with two others, was taken up for trial before a jury, and afterwards sub-

mitted to the court upon testimony already taken and other testimony to be taken. We find the facts of the case to be as follows:

### FINDINGS OF FACTS.

1. The Standard Leather Company is a corporation under the laws of this commonwealth, and in and before May, 1904, was the owner of a factory at Cheswick, Pa., as well as a factory in Allegheny, Pa. The factory at Cheswick was for the making of patent leather and other leather products, and the plant there constituted a more or less hazardous insurance risk.

2. On May 28, 1904, an arrangement was entered into between the plaintiff company and the Negley & Clark Company, a firm of insurance brokers, in the city of Pittsburg, which, on May 31, 1904, was confirmed by a letter written by Negley & Clark Company to the plaintiff company, proposing an employment as brokers to procure insurance for the plant, which proposal was accepted verbally by the company.

3. The substance of this letter, so far as it concerns the Cheswick plant, is that the Negley & Clark Company have examined the policies already in force on that plant, and find the line of insurance to be in exceedingly poor condition, amounting to only about $33,000, of which only $10,000 was good, and they agreed to place $75,000 on the plant in good companies, and at the end of the letter, they say that they will have a special expiration book made for the plant, and agreed that if they will send it every six months to their office, they will check it over, verifying it with their records, the whole letter being made part thereof.

4. The Negley & Clark Company thereupon proceeded to endeavor to place the insurance desired by the plaintiff. For the purpose of doing so, they sent an agent or agents to a large number of insurance offices in the city of Pittsburg, among others to the office of the agent representing the company defendant in this case, and procured, to be signed by it and numerous other companies, a writing com-

monly called an insurance binder, the form of instrument being as follows:

" PITTSBURG, PA., June 9, 1904.

"Fire Insurance is hereby made binding for Standard Leather Company on general form, situate Cheswick, Pa. Forms to be furnished by Negley & Clark Company. Policies to issue. The insurance on this binder shall become void and cease (without further notice) upon issue and delivery of policies at the office of the Negley & Clark Company, or the said insurance may be canceled, at any time during the life of this binding agreement, as provided for in the printed conditions of the form of policy in use by Companies hereto. Rate, two per cent. Time, one year from June 10, 1904."

This was signed by J. W. Kennedy, agent of the insurance company, in the amount of $2,000, and delivered to Negley & Clark Company.

5. On the same day, the agent drew up a policy in accordance with the binder, but did not deliver it.

6. On June 13, 1904, the company ordered a cancellation and on June 16, 1904, Kennedy, the agent who signed the binder, sent to Negley & Clark Company a notice of cancellation, which notice was received by Negley & Clark Company without objection, and the binder was marked " O. C.," meaning Ordered Canceled.

7. Neither in this case, nor any of the other cases tried with it, did Negley & Clark Company inform the plaintiff that they had obtained the binder, or that it had been canceled, until after the loss claimed for. A large number of other companies, which had signed similar binders, or delivered policies to Negley & Clark Company, gave notice of cancellation about the same time to Negley & Clark Company, who, without notifying the principal, proceeded to attempt to procure. other insurance, and did procure some other insurance thereafter, not to take the place of any particular policy which was canceled, but in a general endeavor to fill up the line of insurance they were attempting to procure.

8. The form of policy of insurance referred to in the

binder, is that commonly called standard form of fire insurance policy of New York or Pennsylvania. The portion of that policy which relates to cancellation is as follows: "This policy shall be canceled at any time at the request of the insured, or by the Company by giving five days' notice of such cancellation," with a provision as to the disposition of the premium, in case the premium has been actually paid.

9. On the night of July 12, 1904, the Cheswick plant of the plaintiff company was destroyed by fire, causing a loss of over $93,000.

10. Within a day or two after the fire, the plaintiff company communicated with Negley & Clark Company, and were informed by them that they had in force about $39,000 of insurance, and telling them at the same time that they had had a much larger amount, but that it had been reduced by cancellation, and that a large number of companies had canceled their risks before the fire.

11. No objection was made by the plaintiff company to Negley & Clark Company as to their having received notices of cancellation or permitting the cancellation to be made, and the company proceeded to make proofs of loss upon the policies then in possession of Negley & Clark Company, and adjusted the loss upon those policies with the various companies, and received payment thereof.

12. About a week after the fire, while the adjustment of the loss was proceeding, Negley & Clark Company showed to the president of the plaintiff company the binders in question in this and in the other cases, and ·pointed out to him which of the policies were canceled and which were not. Some time in the latter part of July thereafter, the plaintiff called on Negley & Clark, to furnish them the names of the companies whose policies or binders were claimed to be canceled, and Negley & Clark at first declined to give the information, but afterwards upon formal demand made, they did so, and the binders and information as to the numbers and amounts of the policies, which were claimed to be canceled, were furnished to the plaintiff. The date when the information in question was furnished to the plaintiff by

Negley & Clark Company, after a demand by their counsel, does not definitely appear, but appears to have been about the first week of August, 1904.

13. No notice of the fire was given to the defendant company, until proofs of loss were delivered to it August 12, 1904, and no notice was then given, except the proof of loss itself. A form of policy referred to provides that, "If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company," and further provides that, "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements." It was admitted that neither in this case nor any other case tried with it, was any premium paid.

14. On August 12, proofs of loss were furnished to the company, which were returned with the statement in some form or other that the company was not on the list.

15. It was admitted on the trial that the amount of loss, and the amount of the total insurance was such that if the defendants are liable, they are liable for the whole amount of the plaintiff's claim, being $2,000, with interest from October 16, 1904.

### CONCLUSIONS OF LAW.

1. The proof by the plaintiff of the execution of the binder by defendants' agent makes a prima facie case for the plaintiff. The defense is, first, that the insurance was canceled, and, second, that if it was not, the defendants are relieved from liability by the failure of plaintiff to give notice of the fire according to the terms of the policy.

2. The cancellation relied on in this case, and all the other cases tried with it, consists of a written or verbal five days' notice under the terms of the policy referred to in the binder, or of the policies themselves, where policies were delivered, and the validity of this cancellation is not in question except in one particular, that is, whether, under all the circumstances of the case, the notice of cancellation to Negley &

Clark Company was sufficient. This depends upon the nature of the agency of Negley & Clark Company for the plaintiff.

3. It is stated by counsel that so far as they can find, no case has been decided in this commonwealth, involving the question of the sufficiency of notice of cancellation of a binder or a policy to the agent who procured it, but a number of cases have been cited from other jurisdictions. In some of these cases, a notice given to a broker to procure insurance was held insufficient, and in others, it was held to be good, according to the nature of the broker's employment. There would seem to be no doubt that a broker who was employed to procure a particular policy or policies of insurance would not be a proper person upon whom to serve a notice of cancellation, for the reason that his agency ended with the procurement of a particular policy, and in that case, it would seem to make no difference whether he had delivered the policy to the principal, or informed him of his having procured it or not. On the other hand, it was held in some of the cases cited by counsel, that a notice of cancellation might properly be given to one who was a general agent to procure insurance for his principal, with a general authority to procure insurance up to a certain amount, and entire discretion as to the company's rates of premiums and amounts of policies: Hermann v. Niagara Fire Insurance Company, 100 N. Y. 411 (3 N. E. Repr. 341); Stone v. Franklin Fire Insurance Company, 105 N. Y. 543 (12 N. E. Repr. 45). We are of the opinion that the rule indicated in these cases is the correct one.

4. It becomes necessary, therefore, to determine what was the nature of the employment of Negley & Clark by the plaintiff company, which is to be gathered from the letter of May 31, in which Negley & Clark Company undertake to put in writing the agreements and proposals which had been made shortly before between the parties, and which was afterwards accepted by the plaintiff, and this interpreted by the conduct of the parties thereafter. The letter in question states that they have examined the insurance which the plaintiff then has, and find it in very poor condition, and they

agree to place $75,000 on it in good companies at a lower rate and to have a special expiration book made for the plaintiff company, to go over it every six months for the plaintiff, and check it over, verifying it with their own records. It is very evident that this was intended to authorize the agents to cancel such of the existing policies as they thought were not good, and to get other policies which they should deem better, in such companies as they pleased, for such amounts as they pleased, and for such premiums as they could, and that the employment was expected to continue indefinitely, is shown by the agreement to check up the expiration book furnished the company with the records kept by the agents, every six months thereafter. It is also evidently intended to authorize the agents to procure policies from time to time to take the place of any that should be canceled, at least, until the whole $75,000 of insurance was procured, and there can be no doubt that if in the course of this employment, the agents procured insurance which they should discover to be undesirable, they would have power to cancel the risk without special authority from their employers. We are of the opinion that, under these circumstances, Negley & Clark Company were agents of the plaintiff, to whom notice of cancellation of policies of insurance procured by them might properly be given, so long, at least, as the matter was in fieri, and they were engaged in the endeavor to procure the amount of insurance agreed upon, and had not communicated to their principal what insurance they had, nor delivered policies or binders to it. If this is not the rule under such circumstances, great inconvenience would result both to the agent and the principal. The principal would receive notice of cancellation of insurance of which he never heard, and would be required to communicate the same to his agent, in order that the gap left in his line of insurance might be filled, and this might result in a loss of the benefit of the five days' clause, or at least a part of it, without any corresponding benefit whatever.

We are of opinion, therefore, that the contract of insurance sued upon in this case was duly canceled before the

loss occurred, and therefore direct that judgment be entered for the defendant.

In another of the opinions filed SHAFER, J., held that the rule announced above applied even where Negley & Clark Company represented the insurance company, as well as the insured.

*Errors assigned* were in entering judgments for defendants.

*J. S. Ferguson,* for appellant.—The person procuring the insurance is not an agent to whom notice of cancellation may be given: Hermann v. Niagara Fire Ins. Co., 100 N. Y. 411 (3 N. E. Repr. 341); Quong Tue Sing v. Anglo-Nevada Assur. Corp., 86 Cal. 566 (25 Pac. Repr. 58); Broadwater v. Lion Fire Ins. Co., 34 Minn. 465 (26 N. W. Repr. 455); Rothschild v. American Cent. Ins. Co., 74 Mo. 41; Body v. Hartford Fire Ins. Co., 63 Wis. 157 (23 N. W. Repr. 132); Hodge v. Security Ins. Co., 33 Hun (N. Y.), 583; Adams v. Manufacturers' & Builders' Fire Ins. Co., 17 Fed. Repr. 630; Kehler v. New Orleans Ins. Co., 23 Fed. Repr. 709; Mutual Assur. Society v. Scottish Union Nat. Ins. Co., 84 Va. 116 (4 S. E. Repr. 178); Wilson v. New Hampshire Ins. Co., 140 Mass. 210 (5 N. E. Repr. 818); Lancashire Ins. Co. v. Nill, 114 Pa. 248; Scott v. Sun Fire Office, 133 Pa. 332; Grace v. American Cent. Ins. Co., 109 U. S. 278 (3 Sup. Ct. Repr. 207).

*W. K. Jennings,* with him *D. C. Jennings,* for Insurance Company of North America, appellee.—An insurance broker employed by a party to effect insurance for him may be regarded by the insurer as clothed with full authority to act for his principal in procuring, modifying or canceling policies and his acts in these respects are binding upon his principal: Standard Oil Co. v. Triumph Ins. Co., 64 N. Y. 85; Hermann v. Fire Ins. Co., 100 N. Y. 411 (3 N. E. Repr. 341); Stone v. Fire Ins. Co., 105 N. Y. 543 (12 N. E. Repr. 45); Arnfeld v. Assurance Co., 172 Pa. 605; Schauer v. Queen Ins. Co., 88 Wis. 561 (60 N. W. Repr. 944).

*Brown & Stewart,* for Spring Garden Insurance Company of Philadelphia.—The general rule is that so far as an insurance agent acts as broker he is agent for the insured and not for the insurer; and the proposition that a broker who has general charge and control of the placing of an application for insurance, is a proper person upon whom notice of cancellation may be served, unless he has entirely fulfilled his undertaking, is a corollary to that rule, and is well established in law: May on Insurance, 123; Standard Oil Co. v. Triumph Ins. Co., 64 N. Y. 85; Karelsen v. Sun Fire Office, 122 N. Y. 545 (25 N. E. Repr. 921); Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502; Royal Ins. Co. v. Wight, 55 Fed. Repr. 455; Young v. Newark Fire Ins. Co., 59 Conn. 41 (22 Atl. Repr. 32); Manheim Ins. Co. v. Hollander, 112 Fed. Repr. 549; Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137.

PER CURIAM : March 22, 1909:

The judgments in these cases are affirmed on the opinion of Judge SHAFER.