BLACK STAR LINE, INC., and Another, Respondents, v. BALTICA
    INSURANCE COMPANY, LTD., Appellant.
BLACK STAR LINE, INC., and Another, Respondents, v. THE EAGLE
    STAR AND BRITISH DOMINIONS INSURANCE COMPANY, LTD.,
    Appellant.
BLACK STAR LINE, INC., and Another, Respondents, v. THE MARINE
    INSURANCE COMPANY, LTD., Appellant.
BLACK STAR LINE, INC., and Another, Respondents, v. THE NORTH-
    ERN ASSURANCE COMPANY, LTD., Appellant.
BLACK STAR LINE, INC., and Another, Respondents, v. CITY OF
    NEW YORK INSURANCE COMPANY, Appellant.
BLACK STAR LINE, INC., and Another, Respondents, v. THE
    INDEMNITY MUTUAL MARINE ASSURANCE COMPANY, LTD.,
    Appellant.

First Department, May 6, 1927.

Insurance — marine insurance — notice of disaster — plaintiffs attempted
to pump water from vessel laid up for winter and did not notify defend-
ant carriers until thirty-nine days after having knowledge of condition
— plaintiffs failed to comply with policies which required insured to
give defendants " prompt notice " of disaster — claim that plaintiffs
were not required to give notice until vessel had been found to be total
loss unwarranted under terms of policies — defendants did not waive
requirement of notice.

This is an action to recover on a marine insurance policy in which the principal
question involved is whether or not the plaintiffs gave the defendants a prompt
notice of the disaster as required by the policies of insurance.  The plaintiffs'
steamboat was laid up for the winter early in September at a point in the Hudson
river where the boat rested on mud at ebb tide.  The plaintiffs' contention is
that the boat was inspected from September, 1920, to January 22, 1921, and
was found to be in good condition but that on January 24, 1921, the vessel was
discovered to be full of water.  At that time the river was filled with floating ice.
The plaintiffs, however, did not notify the defendants of the disaster but
endeavored unsuccessfully at different times for about thirty-nine days to pump
the water out of the boat and a notice of the disaster was not given to the defend-
ants until after the lapse of that period.  The notice given at that time did not
comply with the policies which required " prompt notice " of the disaster, and,
therefore, under the terms of the policies the defendants were relieved from
liability.

The defendants' claim that liability under the policies did not attach until there
was a total loss of the vessel cannot be sustained, for the policies specifically
cover " any loss or misfortune."

The act of the defendants in making a survey after notice of the disaster was
served and in retaining proofs of loss filed by the plaintiffs did not constitute
a waiver of the defense of failure to give prompt notice of the disaster.

A letter written by the attorneys for one of the insurance companies to the effect
that his client would not rely upon the defense of failure to serve any notice

inasmuch as a notice had been served upon an affiliated company did not constitute a waiver of the requirement of prompt notice of the disaster, but merely a waiver of the failure to actually serve a notice, and, therefore, said company was left free to interpose that defense.

APPEAL by the defendant in each of the above-entitled actions from a judgment of the Supreme Court in each action in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 30th day of June, 1925, upon the verdict of a jury, and also from an order in each action entered in said clerk's office on the 22d day of June, 1925, denying the defendant's motion for a new trial made upon the minutes.

*Herbert Barry* of counsel [*Gardner D. Howie* with him on the brief; *Barry, Wainwright, Thacher & Symmers*, attorneys], for the appellants Baltica Insurance Company, Ltd., and others.

*Charles Burlingham* of counsel [*William J. Dean* with him on the brief; *Burlingham, Veeder, Masten & Fearey*, attorneys], for the appellants The Northern Assurance Company, Ltd., and another.

*I. Maurice Wormser* of counsel [*William J. Martin* and *Patrick J. Dobson* with him on the brief; *Foley & Martin* and *Joseph P. Nolan*, attorneys], for the respondents.

FINCH, J. While this record and the briefs are voluminous, the question presented for decision can be stated in a small compass. Did the assured give to the defendants prompt notice of the disaster, as required by the policies of insurance?

The facts, in so far as they show the reasons for the decision, can be briefly stated as follows:

The plaintiffs sue as owner and mortgagee, respectively, of the steamboat *Shadyside*, upon which the defendants issued certain policies of insurance. The *Shadyside* was a wooden vessel built in 1873. The vessel was purchased by the plaintiff Swift in 1918, overhauled and repaired, and sold to the Black Star Line, Inc. During the summer of 1920 the vessel was operated as an excursion steamer. On September 14, 1920, the vessel was laid up for the winter in the Hudson river off Edgewater, N. J., at a point where, at the fall of the tide, the vessel rested on the mud. Whether or not this was a proper berthing and also whether the place was unduly exposed to danger from ice floes coming down the river, were contested issues of fact which have been resolved by the jury against the defendants. According to the plaintiffs' testimony, the vessel had been visited from time to time between September 14, 1920, and January 22, 1921, and found to be in good condition and free from water. Plaintiffs further testified that on January 24, 1921, it was discovered that the vessel was full of water and

sunk. At this time the river was packed with ice and it was supposed that the boat had been damaged thereby. Plaintiffs, the next day, attempted to pump the boat out with pumps capable of throwing out about 1,000 gallons a minute, but made no impression upon the water in the vessel until the tide started to go out, when the water in the vessel fell with the tide. The plaintiffs' witness Mason testified that the boiler was heaved up and that the back of the ship was broken. Notwithstanding these conditions, the plaintiffs did not communicate with the insurance companies. According to plaintiffs' testimony, they continued in the attempt to pump the vessel out for a week, discontinued until February eighteenth, when pumping was recommenced, and continued for another week. During all this alleged pumping the condition remained the same as the first day, namely, that pumps made no impression on the water in the boat, but this water continued to rise and fall with the tide. It was not until March 3, 1921, that the insurance companies were notified of the sinking of the boat, a period of thirty-nine days after the plaintiffs had knowledge of this condition. This notwithstanding the fact that the policies of insurance contained the following provision: " In case of any loss or misfortune, it shall be lawful and necessary to and for the insured, their agents, factors, servants and assigns, to give the insurers prompt notice of the disaster, and a failure to do so will render the insurers free from any liability for loss or damage under this policy."

With this condition the plaintiffs utterly failed to comply. They attempt to excuse the delay by claiming that because liability under the policy attached only in the event of a total loss of the vessel, they were not required to notify the defendants until it had been ascertained that the vessel would be a total loss. Such a construction does violence to the unequivocal terms of the policy. The provision in question is not limited to the total loss of the vessel, but to any loss or misfortune. In addition, the same paragraph of the policy requiring prompt notice of disaster gives a right to the insurer to protect itself against a total loss liability under the policy by salvaging the property without thereby suffering any prejudice in respect to the insurance. The insurers are thus vitally interested in obtaining prompt information of any disaster which may be the subject of a claim, in order to afford an opportunity of preventing the vessel becoming a total loss, if possible. In the case at bar the defendants were given no notice until five and one-half weeks after the disaster. In *Whalen* v. *Western Assur. Co. of Toronto* (185 Fed. 490, 492) a delay of three weeks was held to void the policy. In that case, as here, the contention was made

that the assured might delay in giving the notice required by a similar prompt notice of disaster provision, until the extent of the loss was ascertained. The court, in rejecting said contention, said: " There is no force in the suggestion that he waited in order to find out how great the loss would probably be before sending word to Bascom. The clause is not confined to definitely ascertained loss; it requires that ' in case of any loss or misfortune ' prompt notice shall be given ' of the disaster.' Certainly her sinking where she did at that season of the year was a ' misfortune ' and a ' disaster ' the moment it occurred, and the contract expressly stipulated that of such the assured should be promptly notified."

The error into which the respondents have fallen apparently is due to confusing notice of claim of loss with notice of disaster. These are entirely separate and distinct provisions. Also respondents have confused notice of disaster with notice of the cause of disaster. The provision of the policy calls for the former. To substitute notice of the cause of disaster for notice of disaster robs the defendants of a safeguard which they provided for in the policies and on the other hand imposes an obligation which was never undertaken. While a disaster is immediately obvious, its cause may never be known, and if prompt notice of the latter were required, lack of knowledge might excuse. Deductions from premises which do not exist lead to erroneous conclusions.

Failure to comply with the aforesaid provision of the policy requiring prompt notice of disaster to be given bars a recovery by the plaintiffs, since said provision is a condition precedent to a recovery. As was said in *Brown* v. *London Assur. Corp.* (40 Hun, 101, 103): " The provision requiring that the notice of the loss shall be forthwith given to the company, is in the nature of a condition precedent, and if not complied with by the assured or waived by the company defeats a recovery." The position of the defendant upon this point is sustained by an unbroken line of authorities in this country as well as in England. [*Worsley* v. *Wood*, 6 T. R. 710; *Inman* v. *Western Fire Ins. Co.*, 12 Wend. 452; *Underwood* v. *Farmers' J. S. Ins. Co.*, 57 N. Y. 505; *Johnson* v. *Phœnix Ins. Co.*, 112 Mass. 49.] " So also in *Northern Assur. Co.* v. *Standard Leather Co.* (165 Fed. 602): " Equally fatal to the plaintiff's case was the failure to give immediate notice of loss, as required by the policy. The fire occurred July 12, 1904, and the proofs of loss which were not sent in until August 11th, some 30 days afterwards, was the first attempt to comply with this requirement. This is an important provision, the obvious purpose of which is to enable the insurer, while the facts are fresh, to investigate the cause of the fire and the extent of the loss, and it is not to be frittered away by

overindulgent construction favoring the assured, upon grounds which are purely personal."

The respondents contend, however, that the appellants waived the failure to comply with this requirement of the policies by making a survey and by receiving and retaining the proofs of loss filed by the plaintiffs. Neither of these acts can be deemed a waiver under the circumstances in the case at bar. The receipt and retention of proofs of loss might be deemed a waiver of any formal defects in connection with such proofs of loss, but have no relation to a breach of a separate and distinct provision of the policy which arises at the threshold of the claim and not afterwards. At the time of such receipt of proofs of loss the defendants had a perfect defense to the action. The plaintiffs' failure to give prompt notice of disaster could not thereafter be changed or modified. It was impossible thereafter for the plaintiffs to comply with this provision. There was thus no possibility of the plaintiffs being prejudiced by the acceptance of the proofs of loss, and hence there existed no element of estoppel. There was also no consideration for the giving up of defendants' right to rely upon the breach of the contract of insurance. A waiver must be predicated either upon a valid consideration or upon the doctrine of estoppel.

As was said in *Brown* v. *London Assur. Corp.* (40 Hun, 101, 107): " The doctrine of waiver, when made as an answer or excuse for a non-compliance with a condition precedent, is placed upon the ground of estoppel. In *Underwood* v. *The Farmers' Joint Stock Insurance Company* (57 N. Y. 505) the court said: ' The doctrine of estoppel lays at the foundation of the law, as to waiver. While one party has time and opportunity to comply with a condition precedent, if the other does or says anything to put him off from his guard, and to induce him to believe that the condition is waived, or that a strict compliance with it will not be insisted on, he is afterward estopped from claiming non-performance of the condition. Unless there is some consideration for a waiver or some valid modification of the agreement between the parties which contains the condition, I think there can be no waiver of a condition precedent, except there be in the case an element of estoppel. At the time when the affidavit was drawn the plaintiff had forfeited his rights under his policy. Nothing that was then said or done induced him in any way to forego any of his rights, or to omit the performance, on his part, of anything required by his policy; and, hence furnish no estoppel against the defendant.' "

Also in *Perry* v. *Caledonian Insurance Co.* (103 App. Div. 113, 116): " It is urged that the retention of the proofs of loss and failure to return them was a waiver of earlier service, and that the

defendant is now estopped from claiming that they were not regularly served. We do not think this position is tenable. Silence operates as an assent and creates an estoppel only where it has the effect to mislead. (*More* v. *New York Bowery Fire Ins. Co.*, 130 N. Y. 537.) The plaintiff was in no way misled by the retention of the proofs of loss. His rights were gone before he attempted to serve them. His position was made no different because the company ignored his statement or failed to inform him that his proofs of loss were not properly furnished. In order that an insurer under a standard fire policy shall estop itself some of the elements of an estoppel must exist; the insured must have been misled by some act of the insurer, or it must, after knowledge of breach, have done something which could only be done by virtue of the policy, or have required something of the insured that he was bound to do only under a valid policy, or have exercised a right which it had only by virtue of such policy. (*Gibson Electric Co.* v. *Liverpool & L. & G. Ins. Co.*, 159 N. Y. 418.) "

Plaintiffs contend, however, that in so far as the defendant Northern Assurance Company, Ltd., is concerned there was an express waiver, by a letter of their attorneys, reading as follows: " Our client in the above case has asked us to withdraw the technical defense set up in the eighteenth paragraph of the answer dealing with the failure of the insured to give prompt notice of the alleged loss. We are informed that the papers were presented to the adjuster of claims of the Indemnity Mutual Marine Assurance Co., Ltd., which is closely affiliated with the Northern Assurance Co., and that the insurance brokers quite naturally assumed that the latter company would follow the former's action. This, we suppose, accounts for the failure to give notice to the Northern Assurance Co. You may therefore consider the eighteenth paragraph of the answer as withdrawn. This will make unnecessary the execution of the commission which you recently had issued for the taking of testimony on this point before the American Consul at London."

It would thus appear that said letter was sent under the following circumstances: No notice whatsoever, either of disaster or proofs of loss, was served upon the defendant Northern Assurance Company, Ltd., which facts were set up by way of defense in the answer of said defendant. The plaintiffs contended that service upon the Indemnity Mutual Marine Assurance Company, Ltd., was equivalent to service also upon the Northern Assurance Company, Ltd., because of the relations between the two companies. In support of this contention the plaintiffs obtained the issuance of a commission to take testimony at London concerning the relations

between the two companies. The Northern Assurance Company, Ltd., was willing to admit the close affiliation of the two companies and to concede that any service made upon the indemnity company was also service upon it. Under these circumstances the clear import of the letter is that the Northern Assurance Company, Ltd., was willing to waive the failure to file any notice of disaster or proofs of loss upon the said company inasmuch as such service as was made had been made upon an affiliated company. Said letter, however, is not a waiver of the legal effect of any notice which was served upon the said affiliated company.

The plaintiffs having thus failed to comply with a condition precedent to liability on the part of the insurers, it follows that the judgments and orders appealed from should be reversed on the facts and the law, with costs, and the complaints dismissed, with costs.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Judgments and orders reversed, with costs, and the complaints dismissed, with costs.