La France Workshop Lampshade Company, Inc.,
Appellant, *v.* Buffalo Insurance Company of
Buffalo City et al.

Argued January 17, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. Horace Hepburn, Jr.,* for appellant.

*Arthur S. Arnold,* with him *Horace Michener Schell,* for appellees.

OPINION BY MR. JUSTICE LINN, April 1, 1935:

These appeals are from the refusal to take off nonsuits. Each action was on a policy of fire insurance on contents of an industrial plant. The defense was that the policies had been surrendered and cancelled and were not effective when the fire occurred. Decision turns on whether plaintiff's insurance broker, who obtained the policies for plaintiff and who held them, was authorized to surrender them. The authority was denied by plaintiff and asserted by defendant. The learned court below was of opinion that the uncontradicted evidence disclosed that the agent acted within the scope of his authority in returning the policies to the company's agent and that, as there was no insurance at the time of the fire, the plaintiff could not recover.

Lare and Company was an insurance broker and "since the inception of the LaFrance Co." had acted in that capacity for it. Mr. Lare, who attended to plaintiff's insurance, testified at length on the subject. He stated that, constantly since August, 1929, he had acted for plaintiff in and about placing fire, automobile and compensation insurance. He appears to have kept a record of plaintiff's insurance. "As the insurance lapsed, the kind that could be renewed, . . . [he] . . . would renew it without consulting them, and if they did not want it, they sent it back." He selected the companies and determined "what company should cover the plain-

tiff" and the plaintiff had nothing to do with that. Lare negotiated with the companies "and got as much as they were willing" to insure. He prepared the "form" to be added to the policies, specifying "the coverage of the risk, the amount applicable and the various qualifying clauses in relation to the general terms of the policy." The plaintiff, he said, "did not know anything about insurance forms" and had nothing to do with their preparation. During the period of his agency he had received notices of cancellation and, if unable to "convince the company to stay on the risk, . . . replaced it." If, in such case, he "obtained a new contract, [he] delivered it to . . . [plaintiff] . . . picked up the old contract and returned the old contract to the company."

With that description of the broker's activity over a period of years, we come to the policies in suit. Lare determined that insurance in the sum of $75,000 (overruling plaintiff's suggestion that $50,000 should be taken) should be placed on the contents, selected the companies, negotiated with the writing agents as to the amount to be underwritten by each company, and prepared the "form." But, more than that, he recommended that plaintiff make "improvements to the buildings," for the purpose, if made, of obtaining a lower rate than would otherwise apply. He testified that he "placed" the insurance September 23d and 24, 1930, and received the policies in November, and held them "for a correction of the rate." The rate, as we understand the record, would depend on plaintiff's making the changes and improvements suggested by the broker; unless made, the policy rate would not apply. Meanwhile, the policies were held "in violation," that is, awaiting rate approval by the rating bureau.*

---

* See Act of May 17, 1921, P. L. 682, sections 541-52, especially sections 543 and 548; 40 P. S., sections 691-702, sections 692 and 698.

The policies were written by William C. O'Neill & Sons, writing agents, and, subject as stated above, were put into the custody of Lare and Company, plaintiff's broker, and were charged to that broker, who maintained a credit account with the writing agents. Plaintiff was advised by Lare of his possession of the policies. Lare and Company maintained a running account with plaintiff. The writing agents demanded payment of the premiums and Lare and Company put off payment until, finally, they informed the agents, as Lare testified, "that if we had not received [from plaintiff] moneys by a certain date, we would either pay them the premium or return them the policies" and fixed February 20, 1931, as the date for the return. Lare also testified that he told the plaintiff "on several occasions that we would have to get some money or the policies would be cancelled," and that, prior to fixing February 20th as the limit, "we had several limits with the" plaintiff "as to these policies." "Q. You told them [plaintiff] that if they did not pay within a certain time you would cancel the policies? A. Yes."

Not receiving payment of premiums from plaintiff, the broker on February 21, 1931, returned the policies to the writing agents for cancellation.

The evidence generally outlined above, and put into the case by plaintiff, clearly shows that Lare and Company was plaintiff's general agent within the accepted definition of that relationship. The Superior Court (La-France Lamp. Co. v. Fire Assn. of Phila., 112 Pa. Superior Ct. 599, 602, 603) in reviewing a prior trial, summarized the standard as follows: "Joyce, in his work on Insurance, section 639 (a), defines 'General Agency' in the following language: 'The authority conferred upon agents or brokers by insured, or the nature of their employment, may be such as to enable them to accept notice of cancellation which will bind assured. And such notice may be given to a general agent of the assured. Thus, if a broker has been accustomed to act as general agent

in regard to matters of insurance for another, and is vested with discretionary powers in relation thereto, and the company charges the broker with the premium, and the policy remains in its hands, notice of cancellation to such broker is sufficient; so where a broker is authorized to keep the owner's property insured by taking out policies, renewing them, paying premiums thereon for the owner and obtaining other insurance in lieu of expired or cancelled policies and said course of dealing has been carried on for some time, the broker is a general agent of the owner in said matters and the owner is bound by notice of cancellation given to said broker.' In 26 C. J., page 114, section 168, this rule is expressed in the following language: 'A general insurance agent or broker authorized by insured to keep his property insured and to select the insurer may act for insured in waiving notice of, and consenting to, a cancellation.' See, also, Edward v. Home Ins. Co., 100 Mo. App. 695, 709, 73 S. W. 881; Orkin v. Standard Fire Ins. Co., 99 N. J. L. 114, 116, 172 A. 823; Northern Assurance Co. v. Standard Leather Co., 165 F. 602. In Standard Leather Co. v. Ins. Co., 224 Pa. 178, 183, 73 A. 216, Judge SHAFER, in his opinion, which was affirmed by the Supreme Court per curiam, stated that a notice of cancellation might properly be given to one who was a general agent to procure insurance for his principal, with a general authority to procure insurance up to a certain amount, and entire discretion as to the company's rates of premiums and amounts of policies, etc., especially if the entire line of insurance has not been obtained." See also Rossi v. Ins. Co., 310 Pa. 242, 246, 247, 165 A. 16; Dobbs v. Zink, 290 Pa. 243, 138 A. 758.

In appellant's argument it is suggested that, as the policies contained a provision for cancellation "at any time by the company, by giving to the insured a five days' written notice of cancellation . . ." etc., and, as no notice was given by the companies direct to the plaintiff, the policies were nevertheless in force. The contention

must be rejected. For the purposes of this insurance, plaintiff and Lare and Company were one; the authority conferred on Lare and Company, so far as the insurance companies are concerned with it, was sufficient to justify the companies (cf. Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396, 401) in continuing to deal with the broker by accepting the policies from him for cancellation for want of payment of premiums.

But, properly considered, the action of the companies was not under the cancellation clause quoted. The parties were competent to cancel their contract by agreement at any time. See Scheel v. German-American Ins. Co., 228 Pa. 44, 76 A. 507; Arnfeld v. Guardian Assurance Co., 172 Pa. 605, 34 A. 580; Farmers Mut. Ins. Co. v. Wenger, 90 Pa. 220. Indeed, there was a provision on the subject. "This policy shall be cancelled at any time at the request of the insured; in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time."

Assuming that these policies were in force so long as the writing agents were willing to extend credit to Lare (Essington Enamel Co. v. Ins. Co., 45 Pa. Superior Ct. 550), they were entitled to withdraw the credit on reasonable notice. Here, Lare, after several notices that credit would be withdrawn, himself fixed the period at which he would surrender the policies, if not then paid for.

The other assignments of error are framed in such disregard of our rules that they must be dismissed, though, it may be added, we see no merit in them.

In each of the appeals, numbers 405, 406, 407, 408, 409, 410, 411 and 412, January Term, 1934, the judgment is affirmed.