IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG, 1886.

## Lancashire Insurance Co. *versus* Nill, et al.

1. Under the plea of *non est factum* it is the plaintiff's duty to prove the execution of the instrument upon which the suit is brought.

2. A policy of insurance cannot be cancelled without notice to the assured or his agent authorized to receive such notice.

3. An agent for two fire insurance companies cancelled a policy of insurance in one company, and issued a new policy of insurance in its stead, in the other company, without notice to the assured. In an action on the last policy by the assured, *Held*, that there could be no recovery in the absence of proof of authority of the agent to accept notice of cancellation for the assured, and that this authority could not be inferred from the fact that the agent was at the same time agent for both companies and, also, for the assured.

June 1st, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Franklin County :* Of May Term 1886. No. 6.

Debt by Thomas J. Nill and E. J. Nill his wife, in right of wife against The Lancashire Insurance Company to recover the amount of a policy of fire insurance issued by said company on a woollen mill of the plaintiff. Pleas *nil debet*, payment, *non est factum.*

The following are the facts of the case as they appeared on the trial.

(248)

[Lancashire Ins. Co. v. Nill et al.]

In 1881, and prior thereto, Mrs. Nill owned a life estate in a woollen mill situated near Chambersburg, Pennsylvania. About May 1st, 1881, she authorized her husband, Thomas J. Nill, to effect an insurance on this mill to the amount of $1,500, and he procured a policy for that amount from the Hartford Fire Insurance Company, through Kauffman & Brown, their agents at Harrisburg, for one year. When this policy expired (May 1st, 1882) she procured one for a like amount from The Imperial and Northern Insurance Company, from Kauffman & Brown, they being also this company's agents. About June 1st, Mrs. Nill was advised by the company's agents that they were ordered to cancel the Imperial and Northern policy, and they sent her as a proposed substitute a policy in the Clinton Insurance Company of New York for eleven months—the remainder of the year. After Mrs. Nill had talked the matter over fully with her husband, she accepted the Clinton policy, and returned that of the Imperial. Thus matters remained, so far as all parties to this action knew, until August 9th, 1882, when the mill was burned. Mr. Nill gave notice of the loss the same day by letter, received on August 10th, to the Clinton's agents, now Brown & Beggs, claiming under the Clinton policy, and on the latter date he received a telegram to come to Harrisburg the next day, and to bring with him the Clinton policy. On the 11th, he went to Harrisburg with this policy, and was told by Mr. Brown that about the 1st of August, the Clinton Company had ordered their policy cancelled and that he had issued one in the Lancashire (the defendants) in its stead, but neglected to send it to Mrs. Nill. Brown & Beggs were also the agents of the Lancashire. Mr. Nill hesitated about giving up the Clinton policy and accepting that of the Lancashire, but being assured by Brown that "the Lancashire was a first class company," he surrendered the Clinton's policy and took the Lancashire's home with him. The Lancashire company's general officers were ignorant of all these facts, but being advised by Brown & Beggs that they had a loss on the mill in question, they sent a man to inquire into it, and upon learning the facts regarding the issuance of their policy, they refused to pay.

The plaintiffs thereupon brought this suit.

The defendant presented the following points:

1. That it being admitted by T. J. Nill, agent of his wife, that he had issued to the wife a policy of insurance in the Clinton Fire Insurance Company of New York, in June, 1883, for eleven months, for which he paid $37.50, and that the said policy was accepted by the wife, and was in her possession at the date of the fire, the claim against said Clinton Company being a valid claim upon which the wife could have recovered

the amount of said policy, she cannot recover against the defendant.

Answer.—I do not affirm this point. If you find that Brown was the agent of Mrs. Nill for the purpose of accepting a policy of insurance from the Lancashire Company, according to my instructions already given; if he had implied authority from the course of their previous dealings to put Mrs. Nill into this company or that company at his option, and that thus he was her agent for the purpose of selecting the company, and for the purpose of accepting a policy in any one of these companies, then when he cancelled the Clinton Company's policy, and did accept a policy in the Lancashire Company, that was an end of the Clinton Company's insurance, and it was no longer operative, and the Lancashire Company would be bound. (Sixth assignment of error.)

2. The Clinton Company, through its agents and managers, could not rescind or cancel the policy made to Mrs. Nill in June, 1883, without the consent of Mrs. Nill, or without reasonable notice to her of their purpose to rescind, and in this case no such notice was given.

Answer.—The Clinton Company could not rescind its policy without the consent of Mrs. Nill, or, at least, without due notice to her, and no such notice was given. But if Mr. Brown was her agent, with implied authority, in the manner I have spoken of, to transfer her from one company to another, and to receive a policy for her, then I say that the notice given to Brown by the Clinton Company, and his consent to the cancellation of the policy, was hers, and that this point raises no obstacle to her recovery. (Seventh assignment of error.)

3. The plaintiffs in this case, holding a policy in the Clinton Company at the time of the fire, on the 9th of August, 1882, and having given notice of loss under that policy, can have no claim in this case against the Lancashire Company.

Answer.—I refuse this point. The evidence of Mr. Nill was, that up until the 11th of August, after the fire, he was holding the Clinton Company's policy, and he did not know of any other policy, as he said; but he also said that he gave notice to Messrs. Brown & Beggs simply of the fact that a fire had occurred; that he did not give the notice formally as a claim against the Clinton Company, but he gave it to these parties as insurance agents generally. If that be the way in which it was given, then I instruct you that the notice given to Brown & Beggs in that way was a notice to whatever company really was bound to Mrs. Nill, and for which they were the general agents. (Eighth assignment of error.)

4. That an agent of an insurance company has no authority to insure property already destroyed; and a policy written

and intended as a substitute for a subsisting policy in another company, but not delivered, and of which the assured had no knowledge until after the property is destroyed, is not a valid contract of insurance.

Answer.—I affirm this point in its general terms, but not without qualification with reference to the circumstances of the case.   An agent of an insurance company has no authority to insure property already destroyed.  But Mrs. Nill, through her counsel, contends that this property was insured before it was destroyed, because this policy is dated the 28th of July, and she claims that it was delivered to her on the 1st of August, that is, delivered to Brown as her agent, and that that was a delivery before the property was destroyed.  If you find that there was no delivery, under the instructions we have given you, until after the property was destroyed, then the plaintiff cannot recover, and the point is well taken.  But if a policy was written and intended as a substitute for a subsisting policy in another company, and it be delivered before the fire occurs, then that the assured had no knowledge until after the property was destroyed does not affect it, if, in point of fact, the agent had the authority, express or implied, to change from one company to another, and was the agent of the insured for the purpose of accepting a policy.   (Ninth assignment of error.)

5.  T. J. Nill, the agent of his wife, having stated in his evidence that he held the Clinton policy at the time of the fire; that he gave notice under it to the company; that he paid his money on that policy and no other; that he knew nothing of the existence of the policy under which the plaintiffs claim until after the fire, that is to say, on the 11th of August, the fire having occurred on the 9th of August; that he received the policy on said 11th of August; that he never knew of or authorized the substitution of the Lancashire for the Clinton; the said policy is not a valid contract upon which the plaintiff can recover in this case.

Answer.—I cannot affirm this point.   First of all, it assumes certain facts as existing which are not conceded, and which you must ascertain for yourselves; as, for instance, it assumes that Mr. Nill's testimony was to the effect that he gave notice under the Clinton Company's policy to that company.   But it is for you to say whether he did or not, under the instructions I have already given you.   This point, therefore, I cannot affirm in the language in which it is stated, and I must submit the matter to you on the instructions I have already given you without repeating them.   If you once decide that this policy was duly issued by and was the deed of the Lancashire Company, that the preliminary conditions were fulfilled and

that the premium was paid, then the question resolves itself very much into this: Whether, under all the circumstances of the case, Mr. Brown was really the agent of Mrs. Nill as well as for the company, that is to say, was her agent for the purpose of placing the insurance wherever he thought best and for her. If you be of that opinion, then the matter stated in this point would not prevent recovery by her. (Tenth assignment of error.)

Verdict for the plaintiff in the sum of $1,732.50, and judgment thereon, whereupon the defendant took this writ, assigning for error the answers of the court to the points as shown above and in addition filed the following assignments of error.

1. The court below erred in submitting the question to the jury whether the policy of the Clinton Insurance Company had not been cancelled and the defendants' policy issued before the fire—there being no evidence thereof.

2. The court below erred in admitting the policy of the defendant in evidence—there being no proof of its execution, and the fact of execution being denied by affidavit of defendants in accordance with the rule of the court below.

3. The court erred in submitting to the jury the question whether Brown & Beggs had authority from Mrs. Nill to cancel the Clinton policy and accept the policy of defendant—there being no evidence of such agency.

4. The court erred in admitting Brown's declarations concerning the issuance of the policy of defendant—there being no legal evidence of the agency.

5. The court below erred in submitting the question to the jury whether the premium had been paid to the defendant company, there being no legal evidence that Brown & Beggs were in possession of funds of the Clinton Company, and as such paid it over or held it as agents for the Lancashire Company, and in charging as follows: " Now, when the Clinton Company's policy was cancelled, the Clinton Company must refund a portion (namely, three quarters) of the premium which their agent held in his hand for the whole year, from May 1st, 1883. I suppose $31.95, which we find in this policy, would be the amount. Then, if the Clinton Company would have to refund that sum, and he [Brown], being their agent and having their moneys in his hands, cancelled their policy, it is contended, and it seems to me properly, that he would then have in his hands $31.95 of Mrs. Nill's money to appropriate to some other insurance ; and then he appropriated it to pay the premium for $1,500 insurance for nine months, making the remainder or the year, in the Lancashire Company. And thus it would seem, if these be the facts of the case, that Mrs. Nill did pay the premium, $31.95, in this way; Brown & Beggs

[Lancashire Ins. Co. v. Nill et al.]

acting as her agents in this business of transferring the policy from one company to the other, they being the agents for all these companies, and acting for Mrs. Nill in making these transfers. It would seem, thus, that she did pay the premium for this insurance of nine months, supposing you to accept the evidence of Mr. Nill in regard to these transactions."

*Sharp & Alleman,* (*F. M. Kimmel* with them) for plaintiff in error.—Unless Brown & Beggs, the agents of the insurance companies had authority from Mrs. Nill or her immediate agent to cancel the Clinton policy it remained in force: Stebbins *v.* Lancaster Ins. Co., 60 N. H., 65; Massasoit Mills *v.* Western Ins. Co., 125 Mass., 110.

And even if the agents, Kauffman & Brown, were the agents of Mrs. Nill to place the insurance originally, that did not constitute them or Brown & Beggs agents to receive notice from the company of the cancellation of the Clinton policy. This has been flatly held in a case, reversing the court below, in Grace *v.* Insurance Co., 109 U. S. R., 278.

But again, it was not only necessary to the cancellation of the Clinton policy that the assured should be notified of the cancellation, but the unearned premium must have been returned. See May on Insurance (Ed. 1882), § 67.

There was no proof of the execution of the policy. This, under the plea of *non est factum,* was necessary.

The seal of a private corporation does not prove itself: Farmer's Turnpike Co. *v.* McCullough, 1 Casey, 303; Angell & Ames on Corp., § 226, and cases cited.

*John Stewart* for defendant in error.—On the plea of *non est factum,* wherever there is a spark of evidence of sealing and delivering, the court are bound to permit the instrument to be read; for it is not for them, but the jury, to judge of the fact." Berks & Dauphin Turnpike Road *v.* Myers, 6 S. & R., 15; Sigfried *v.* Levan, Id., 310, and Scott *v.* Gallagher, 11 S. & R., 350.

"It is well settled," says SHARSWOOD, J., in Hamsher *v.* Kline, 7 P. F. S., 402, " that if there is any evidence, however slight, tending to prove the formal execution of a deed, it is sufficient to entitle it to go to the jury."

The agency of Brown & Beggs, and the authenticity of the policy, were both questions of fact, properly submitted to the jury, and determined by them.

From the facts adduced in evidence we asked the jury to infer a general authority to represent the plaintiff in all matters relating to the particular insurance. Such general authority if it existed, would be sufficient warrant for Brown &

Beggs to accept notice of cancellation for the insured: Standard Oil Co. *v.* Triumph Insurance Co., 64 N. Y., 85; Herman *v.* Niagara Fire Ins. Co., 2 East Rep., 932.

Mr. Justice GORDON delivered the opinion of the court, October 4th, 1886.

This case is all wrong. In the very outstart, under the defendant's plea of *non est factum*, it was the plaintiff's business to prove the execution of the policy sued upon; but this was not done; nevertheless the court, notwithstanding the defendant's objection, admitted it, and sent it to the jury with the instruction that they should treat it as the defendant's deed if they found that it was countersigned by Brown & Beggs, and if they were also satisfied that these persons were the company's agents. In this there was double error, for neither was the execution of the policy proved, nor the agency of Brown & Beggs. "It purports," says the court, "to have been signed by Henry Robinson, the United States manager, and countersigned by Brown & Beggs, at Harrisburg. Mr. Nill tells you that it was received by him from Mr. Brown, of the firm of Brown & Beggs, and that Brown & Beggs claimed to be the general agents of the company at Harrisburg; he treated with them as such. Then you are told further that the adjuster, or one representing himself to be the adjuster of the company, came here and saw Mr. Nill in reference to the fire." All this, however, is assumption without evidence for its support.

We have examined the testimony in vain in order to discover such proof as would warrant the submission of such statements to the jury. There is nothing to show that either Henry Robinson or Brown & Beggs had any authority whatever to sign or countersign the defendant's policies. In this branch of the case, therefore, the plaintiff signally failed, and the court should so have instructed the jury. But admitting the execution of the policy and the agency of Brown & Beggs, and still the plaintiff was not entitled to the verdict.

The court directed the jury to determine whether Brown & Beggs were not acting as agents as well for the plaintiff as for the Lancashire company. Of this however, there was no evidence; the very contrary. Nill obtained the Clinton policy from these agents and paid them the premium through the medium of the post office, and never had a personal interview with either of them until the 11th of August following. Mrs. Nill had no agent but her husband, nor was any other necesary.

She desired no change; the Clinton policy was perfectly good, and could not be cancelled without notice to her, and neither she nor her husband knew of the action of Brown &

Beggs until the date above mentioned, which was after the loss, when these men imposed alike on Nill and the defendant by inducing him to surrender the Clinton policy and accept the one now in suit. A brief history of this transaction is found in his affidavit of the 17th of August, 1882, wherein Nill testifies: "On Friday morning the 11th instant, I took the 8.23 A. M. train at Greencastle for Harrisburg, arriving there about 11 A. M. I went from the depot to Brown & Begg's office, where I was obliged to wait till after 12 M. before I saw said Mr. Brown. Mr. Brown came to the office. He had to tell me the Clinton Insurance Company had, about the 1st of August 1882, cancelled their policy on the said mill, and that he had put us in the Lancashire Fire Company, but he neglected to notify us of the change. I then asked him if it would make any difference in the exchange, or whether our rights would be affected or prejudiced by the exchange. He, the said Brown, then said it would not, as the company he had put us in was a first class company. I then gave him, the said Brown, the said Clinton policy, and he gave me the Lancashire policy. This was the first notice we had received of any change or any desire for a change." From what is here said, and it accords strictly with his evidence given on the trial of the case, it is very clear that Brown's previous action was without warrant from the assured, and it will, we presume, hardly be pretended, that, had Nill on the 11th of August, refused to surrender the Clinton policy, Brown's pretended cancellation of it would have released that company from its obligation to Mrs. Nill. But if the Clinton policy was still in force on the 11th of August, 1882, two days after the fire, the action of Brown & Beggs in the delivery of the Lancashire policy as a substitute for that of the Clinton company, was a mere attempt to shift the loss from the company upon whom it had fallen, to the other which, at the time of the fire, had assumed no responsibility. It requires no argument to show that this could not be done, and that the attempt to accomplish a design of this kind was a fraud on the defendant. Neither does it appear from the evidence that the defendant received a premium as a consideration for its policy.

The court allowed the jury to infer that as Brown & Beggs were agents for both the companies as well as for Mrs. Nill, and as on cancellation of the first policy the unearned part of the premium must be refunded, therefore, these agents received this money thus due the plaintiff, and paid it on the Lancashire policy. This might have been so, but as there was no evidence of it, the court ought not to have devised and sent to the jury a theory that had no foundation in fact. Following the regular order of business, and the return premium would

not be payable to the insured until the policy had been sur-
rendered, and, of course, until after that time there was noth-
ing in the hands of Brown & Beggs belonging to the plaintiff
which could be paid to the defendant.

Thus, however we view this case, we discover no foundation
of fact on which it can rest, or which could warrant a submis-
sion of it to the jury.

> The judgment of the court below is reversed, and
> a new *venire* awarded.