# George W. Mauk *v.* The Commercial Union Assurance Co., Appellant.

*Insurance—Surrender of policy—Question for jury.*

A contract for insurance, providing for notice, cannot be canceled without it. Where a policy has been delivered by the insured to the local agent on his request, and the condition as to this delivery is disputed as to

whether it was so surrendered for cancelation or correction, the treatment of the policy raises a disputed fact which is properly for the jury.

Argued March 23, 1898. Appeal, No. 18, March T., 1898, by defendant, from judgment of C. P. Bedford Co., on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Assumpsit on policy of insurance. Before LONGENECKER, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $895.50. Defendant appealed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant. (2) In the general charge as follows: "Now, gentlemen of the jury, there are several questions of fact in this case for your determination, and I leave them entirely to you. Was there an understanding when this insurance was solicited that a change might be made from one company to another, as any portion of the insurance was declined? Did Mr. Mauk authorize Mr. Moore's agency, in the event that any of the insurance was declined by any one company, to substitute another in its place? Was it known and anticipated by the plaintiff, from the representations made to them by Mr. Moore that a portion of the insurance might not be accepted and that other insurance would in that event be substituted for it? If that was understood in the outset and Mr. Moore was authorized to change the insurance from one company to another, under such circumstances, then it makes a vast difference in the law as it effects this whole case. You are therefore to ascertain whether the parties acted with a view to the possible cancelation of any of these policies, and the placing of the insurance in another company under such circumstances. Also, whether, when Mr. Mauk came in with the policy, he delivered it to the insurance agency simply for the purpose of correction of some supposed error, or whether, on the other hand, as the company contends, it was delivered with the understanding and upon the representations made to him that the insurance company refused to take the risk and directed the policy to be canceled. As a matter of course, gen-

tlemen, if Mr. Mauk surrendered his policy with the understanding that it was to be canceled, that is the end of this case ; for then he surrendered his contract. If, on the other hand, he surrendered it merely for the purpose of some alleged correction, then he did not surrender any of his rights under the policy. So I say to you that becomes a very material question in the case. Now it is not denied, I believe, that the Susquehanna policy was to take the place of the policy in the Commercial Union. Did Mr. Moore have any authority to make this substitution? Was it a part of the understanding that he might make such change? The policy is dated the 25th of May, the day preceding that on which the policy in suit was brought into the office. It is conceded on both sides, as I recollect, that Mr. Moore promised to keep the plaintiff insured in good companies for the amount of insurance which he had undertaken to place, namely, 'five thousand dollars.' "
(4) The charge as a whole was not a fair, adequate presentation of the case.

The other assignments were directed to pointing out specifically the portion of the charge alleged to be unfair and inadequate.

*John H. Jordan* and *Alexander King*, for appellant.—The Supreme Court has held in numerous cases that it is the duty of the court, where there is a clear preponderance of evidence, to instruct the jury that this weight of evidence must control: Richards v. Willard, 176 Pa. 181, 202; Holden v. Railroad Co., 169 Pa. 1, 16 ; Butler v. Railroad Co., 126 Pa. 160 ; Hyatt v. Johnston, 91 Pa. 196.

The doctrine as laid down in Hyatt v. Johnston and cases cited supra, is approved by this court in the opinion filed by BEAVER, J., in Rothschilds v. McLaughlin, 6 Pa. Superior Ct. 347, and under these rulings there was not sufficient evidence for the plaintiff to submit the case to the jury. The charge of the court contained no clear statement of the questions involved and no adequate presentation of the law, and under such conditions should be reversed by the appellate court: Tietz v. Traction Co., 169 Pa. 516.

We have endeavored as BEAVER, J., in Com. v. Swayne, 1 Pa. Superior Ct. 547, indicated should be done, specifically to

set forth the errors complained of, and we think they call attention to the oversights and omissions to such an extent that they need very little elaboration in the way of argument.

*Edward M. Pennell*, with him *Russell H. Colvin*, for appellee. On the trial of the case there were two controlling questions of fact. These questions of fact were fully, clearly, fairly and properly submitted to the jury, and under all the evidence they found in favor of the plaintiff.

In Pennsylvania the law is well settled that a policy of insurance cannot be canceled without notice to the insured: Ins. Co. v. Nill, 114 Pa. 248; Scott v. Sun Fire Office, 133 Pa. 322; Shaffer v. Clark, 90 Pa. 94.

In Goldstrohm v. Stenner, 155 Pa. 28, the court charged the jury: "There is a majority of the witnesses on the side of defendant, but that does not always govern. You are to take the surrounding circumstances and look at the case in view of the possibilities and probabilities as they appear in the evidence before you and then credit such witnesses as you believe are entitled to credit." See also Holland v. Kendregan, 155 Pa. 156.

A careful reading of the entire charge in the light of the testimony will show it a plain, clear, concise summary of the evidence, a fair presentation of the case toward both parties, both as to the law and the facts, and all in all a full and complete charge.

OPINION BY ORLADY J., July 29, 1898:

The plaintiff desired an insurance of $10,000 on his gristmill, and through two agencies at Bedford, Pa., secured policies of $1,000 each in ten companies.

There was some delay in placing the risk, and after a company—the American—had declined to take it, a policy was issued by the defendant on May 18th, held by the agents until May 23d, and then delivered to the plaintiff.

On May 26th a representative of the defendant's local agency called on the plaintiff and requested that the policy so issued be given to him to take to the Bedford office to have an error corrected; and the same day the plaintiff personally delivered the policy at the Bedford office to a member of the local agency. That night the mill burned.

On May 29th the plaintiff demanded the return of the policy of the local agent and was then informed that the defendant claimed that the policy was voluntarily surrendered by the plaintiff for cancelation, and that a policy for a like amount in another company was substituted by the local agents, which was then delivered to the plaintiff with the assurance that it was perfectly safe.

On the 4th of the following June the representatives of the companies interested in the fire met and adjusted the loss. At this meeting the plaintiff submitted all the policies in his possession, including the one of the Susquehanna Mutual, which had been given to him in substitution of the one issued by the defendant, and proofs of loss were then made out and verified by the affidavit of the plaintiff.

On June 29th proofs of loss were made out against the Commercial Union Company; and this action was brought to recover on the policy issued on May 18th and delivered to the plaintiff on May 23d, and he does not claim any right to recover on the substituted policy in the Susquehanna Mutual. He contends that he left the policy of the defendant company with the local agents merely for inspection, and had no notice of the alleged cancelation until after the fire had occurred. Around this disputed fact this issue is raised, and on the trial below the defendant submitted a point that "under all the evidence in the case the plaintiff is not entitled to recover and the verdict of the jury must be for the defendant," the first assignment which was refused by the court, and the other propositions as urged in points were affirmed. The jury was instructed, viz: "This case turns largely upon the conclusion which you shall reach as to the understanding and intention of the parties at the time the insurance was taken, with regard to the right to rescind and to cancel any of these contracts, and the understanding at the time this policy in suit was brought back here and given to Mr. Moore—whether for cancelation or whether for some other purpose. You will consider all the evidence and determine the facts as we have referred to them, and in view of the instructions we have given you, and arrive at a just and correct conclusion."

It must be admitted that the contract of insurance between these parties was complete when the policy was delivered and

the premium paid. The subsequent treatment of that policy raises a disputed fact which was properly referred to a jury.

It is not contended that the plaintiff objected in any way to the Commercial Union policy. The request for its return to the local agent came from the company, but the purpose is disputed.

The contract as then existing could not be canceled by the insurance company without notice to the insured: Lancashire Ins. Co. v. Nill, 114 Pa. 248; Scott v. Sun Fire Office, 133 Pa. 322.

The provision for cancelation contained in the policy requires that five days' notice of intention to cancel shall be given; and Mr. Moore, the local agent, testifies in chief, that "on the 26th of May Mr. Mauk brought the policy in, and I told him that the company had ordered it canceled and that I would have to return the policy, and that I would keep him insured in another company. He said all right and surrendered the policy to me." On cross-examination he stated: " When Mr. Mauk came in he handed me the policy and he said that Mr. Wertz had asked me to bring that policy down, that there was some correction to make in it."

The plaintiff denies this version of the conversation, and testifies in relation to the same interview that " Mr. Wertz called in and asked for the Commercial Union policy; said there was an error in it and that Mr. Moore wanted to correct it. I took the policy to Mr. Moore and handed him the policy and he just took it up and examined it. After he looked at it he said there was nothing wrong with it. He said: ' I certainly must have made a mistake in making my report to the company, but I will hold the policy until I hear from the company again,' says I, ' All right,' says he, ' my man will be down tomorrow or the day after for flour and I would just give him the policy.' After the fire I demanded the Commercial Union policy and he says that policy is canceled; but he says I have written you up in another company perfectly safe. I demanded, I told him I wanted the Commercial Union; that that was a stout company. That was the first notice I had of the cancelation of the Commercial Union." The plaintiff cannot have his contract changed without his consent except under

the exact terms of the policy, and he refused to ratify the act of the agent of the defendant in substituting another company.

He alleges that he was not consulted in regard to it, did not assent to the act of the agent and at the first opportunity repudiated it, making this case entirely different from Arnfeld v. Assurance Co., 172 Pa. 605.

Taking the charge as a whole we think it was full, fair and adequate.

The assignments of error are overruled and the judgment is affirmed.