## Provident Life & Trust Company, Appellant, *v*. Spring Garden Insurance Company.

*Principal and agent—Death of principal—Revocation of agency.*

1. A power not coupled with an interest, is revocable, and the death of the principal strikes down the power of the agent.

*Principal and agent—Insurance—Cancellation of policy—Power of agent.*

2. Where an agent is authorized to obtain policies of fire insurance for his principal, and he has procured the insurance thus authorized, he has no power, in the absence of further authority, to agree to a cancellation of any of the policies which he had procured.

3. Where a person is the agent of two insurance companies, he cannot shift a part of the risk on a building insured by one of the companies, to the other company, without the knowledge and consent of the insured and without the consent of the second company.   If the policy issued in the name of the second company reaches the insured after the property had been destroyed by fire, it is too late for the insured to ratify it, and the second company has a right to repudiate it.

Argued Oct. 9, 1912.   Appeal, No. 193, Oct. T., 1911, by plaintiff, from order of C. P. No. 5, Phila. Co., March T.,

1909, No. 467, entering judgment for defendant n. o. v., in case of Provident Life & Trust Company, Executors under the will of Samuel R. Shipley, deceased, v. Spring Garden Insurance Company.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY and PORTER, JJ.  Affirmed.

Assumpsit on a policy of fire insurance.  Before MARTIN, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,140.  Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* among others was in entering judgment for defendant n. o. v.

*F. R. Shattuck,* for appellant.—A binder given by an agent is as much an obligation on the part of a company as though a policy had actually been executed: Springer v. Anglo-Nevada Assur. Corp., 33 N. Y. St. Repr. 543.

It is respectfully submitted that the nearest decision under facts somewhat resembling those under discussion here is that of Arnfeld v. Guardian Assur. Co., 172 Pa. 605.

Plaintiff further calls attention to the decision in the case of Scheel v. German-American Ins. Co., 228 Pa. 44.

*Gustavus Remak, Jr.,* for appellee.—We submit with confidence that every necessary element from which authority in an agent to accept cancellations for an assured can be implied, is lacking under the evidence in this case.  The appellee relies on these cases: Lancashire Ins. Co. v. Nill, 114 Pa. 248; Kerr v. Ins. Co., 117 Fed. Repr. 442; Phœnix Ins. Co. v. Kerr, 129 Fed. Repr. 723; Clark v. Ins. Co. of N. A., 89 Me. 26 (35 Atl. Repr. 1008); Stebbins v. Ins. Co., 60 N. H. 65; Davis Lumber Co. v. Ins. Co., 95 Wis. 226 (70 N. W. Repr. 84); Larsen v. Ins. Co., 208 Ill. 166 (70 N. E. Repr. 31); Hartford Fire Ins. Co. v. McKenzie, 70 Ill. App. 615; Nabors v. Commercial

Union Assur. Co., 51 So. Repr. 429; Johnson v. North British, etc., Ins. Co., 66 Ohio, 6 (63 N. E. Repr. 610).

The fact that the Provident has elected to sue on the Spring Garden policy, nearly nine months after the fire, is the only evidence of ratification of Brightman's acts. This is exactly what happened in the Ohio case of Johnson v. North British, etc., Ins. Co., 66 Ohio, 6 (63 N. E. Repr. 610), and was not sustained.

Brightman having acted for both plaintiff and defendant, without defendant's knowledge of his agency for plaintiff, ratification by the defendant before loss was necessary to make its policy effective: Arispe Commercial Co. v. Ins. Co., 9 L. R. A. (N. S.) 1084; Brit.-Am. Assur. Co. v. Cooper, 6 Col. App. 25 (40 Pac. Repr. 147); Ramspeck v. Pattillo, 104 Ga. 772 (30 S. E. Repr. 962); Phœnix Ins. Co. v. Hamilton, 110 Ga. 14 (35 S. E. Repr. 305); Hartford Fire Ins. Co. v. McKenzie, 70 Ill. App. 615; London, etc., Fire Ins. Co. v. Turnbull, 86 Ky. 230 (5 S. W. Repr. 542).

The repudiation by the Spring Garden of its alleged policy, before ratification by the Provident, made any subsequent attempt to ratify ineffectual: Townsend v. Corning, 23 Wend. (N. Y.) 435; Atlee v. Bartholomew, 69 Wis. 43 (33 N. W. Repr. 110); McClintock v. South Penn Oil Co., 146 Pa. 144; Dodge v. Hopkins, 14 Wis. 630; Mason v. Caldwell, 10 Ill. 196.

OPINION BY PORTER, J., February 27, 1913:

Samuel R. Shipley was, in his lifetime, the owner of the New Cliffs Hotel and cottages, situate at Newport, Rhode Island, the insurance upon which buildings was represented by certain policies which expired on May 17, 1908. Mr. Shipley died, on April 20, 1908, leaving a last will, under which he appointed the Provident Life & Trust Co., executor, and constituted said company trustee of his real estate in question. The policies of insurance then in force had been issued through the office of one Brightman, an insurance agent of Newport, who,

on May 7, 1908, addressed a letter to the trust company, the executor, expressing a desire for a continuance of the business and for information as to the name (of the assured) in which the policies on the hotel and property, expiring on May 17, were to be renewed. The trust officer of the plaintiff replied by letter instructing Brightman to renew the insurance on the hotel, which would expire on the 17th inst., in the sum of $34,000, the policies to be written in the name of "The Provident Life & Trust Co. of Philadelphia, executor and trustee under the will of Samuel R. Shipley, deceased." In pursuance of this instruction Brightman procured policies of insurance upon the hotel building, contents, and cottages, the policies on the hotel building aggregating $34,000, and on May 15, 1908, mailed said policies, all being dated May 17, 1908, to the trust company, the plaintiff, together with his bill for the premiums. The policies were duly received by the trust company, which on May 19, returned certain of them to Brightman for correction. Brightman made the corrections in the policies requested and returned the policies to the plaintiff on May 20. The trust company, on May 20, sent its check, by letter, for $875 in full of the premiums to Brightman, who on the following day replied by letter acknowledging the receipt thereof. The trust company, the executor, then had in its hands all the policies which it had authorized Brightman to procure and it had paid to him the premiums upon said policies; everything which the trust company had authorized Brightman to do had been done, and for doing it he had been paid. Among the policies on the hotel building, which aggregated $34,000, was one issued by the Pennsylvania Fire Insurance Co., of which Brightman was the duly appointed agent, said policy being in the amount of $2,500. The Pennsylvania Fire Insurance Co. wrote Brightman, on June 1, 1908, instructing him to reduce the risk of that company on this property to $1,500; Brightman wrote, on June 3, endeavoring to have the insurance company reconsider this deter-

mination, but the company replied by letter, of June 5, 1908, insisting upon said reduction of the amount of its risk. Brightman, as agent of the Pennsylvania Fire Insurance Co., did nothing to carry into effect this instruction from his principal to reduce its liability upon the risk, until June 8, when, according to his testimony, he, through an employee, "bound $1,000 in the Spring Garden Fire Insurance Co. and $1,500 in the Pennsylvania Fire Insurance Co., and duly notified, in writing, the special agents of both companies in his territory, and to whom it was his duty to make daily reports." His daily report, showing this action, did not reach the companies, respectively, until June 9, and in the meantime the building had been destroyed by fire, very early in the morning of that day. Neither the Pennsylvania Fire Insurance Co. nor Brightman, its agent, made any attempt to notify the assured, this plaintiff, of an intention to cancel the $2,500 policy of the Pennsylvania Company, then in the hands of the assured, which policy contained a clause giving the insurance company the right to cancel it after five days' notice. Brightman, on June 9, after he knew that the building insured had been destroyed by fire, wrote to the assured, this plaintiff, saying: "Enclose you policies No. 100246 Pennsylvania and policy No. 5440 Spring Garden to take the place of policy No. 100242 Pennsylvania. The Pennsylvania wished to decrease its line to $1,500, so have placed $1,000 in the Spring Garden." This letter requested the return of the Pennsylvania policy No. 100242. This letter, inclosing the policies mentioned, was received by the assured on June 10, 1908, and was the first intimation to the assured of any desire upon the part of the Pennsylvania Fire Insurance Co. to reduce its risk or to cancel the policy then held by the assured. On the morning of the same day and at about the time the package through the mail reached the assured, an authorized representative of the defendant company called upon the assured, the trust company, and notified its proper officers that as the

policy now in suit was in substitution of a policy held by the assured at the time of the fire and as the policy of the defendant company had not been delivered to the assured at the time of the fire, the defendant company declined to be bound by the contract.   There was no evidence which would have warranted a finding that the assured, the plaintiff, ever ratified the act of Brightman in substituting the $1,000 policy of this company and the $1,500 policy of the Pennsylvania for the $2,500 policy of the latter company, or that the plaintiff ever consented to the cancellation of the $2,500 policy of the Pennsylvania. The proofs of loss furnished by the plaintiff to the defendant company contained a schedule showing the insurance upon the hotel building, which, including policy No. 100242 Pennsylvania Fire of Philadelphia for $2,500; No. 100246 Pennsylvania Fire of Philadelphia for $1,500 and No. 5440 Spring Garden of Philadelphia for $1,000 aggregated $36,500.   These proofs contained this specific statement as to the position of the plaintiff with regard to the policy in suit: "The total amount of insurance given above is $2,500 more than the total amount of our claim, but every insurance policy upon the hotel property has been included in the above schedule, since there is at present a controversy between the Pennsylvania Fire Insurance Co. of Philadelphia and the Spring Garden Insurance Co. of Philadelphia as to whether the Pennsylvania Company is liable under policy No. 100242, or whether it is liable under policy No. 100246 and the Spring Garden under policy No. 5440."   The plaintiff having brought this action upon the policy of the Spring Garden recovered a verdict, under the instruction of the court below, but the court subsequently entered judgment in favor of the defendant non obstante veredicto, from which action the plaintiff appeals.

The plaintiff concedes that it is not entitled to recover unless there was a valid substitution of the policy in suit for the policy of the Pennsylvania Fire Insurance Co. which was in the hands of the assured at the time of the

fire.   The plaintiff had held that $2,500 policy of the Pennsylvania from May 16, until June 9, when the loss occurred, and during that interval had received no intimation that the Pennsylvania was dissatisfied with the risk, or wished to reduce it, or intended to cancel the policy.   The Pennsylvania Fire Insurance Co. had notified its own agent, Brightman, directing him to take action necessary to have its liability upon the risk reduced, but Brightman had failed to inform the assured of that fact. Brightman was agent, also, for the Spring Garden Insurance Co., and in his dual capacity undertook to rearrange the matter of this insurance in his own way.   His purpose probably was to retain all the business for such companies as he could represent as agent.   He made the mistake of failing to consult the assured, but his course of action cannot be said to have indicated a purpose to bind the assured, or to do more than submit the matter of the substitution to the judgment of the assured, whose consent he probably meant to obtain.   The fire occurred before he had his arrangements completed, and he then attempted to carry out his preconceived ideas, just as if no loss had occurred.

This defendant can only be held liable upon the ground that it had assumed the responsibility prior to the loss. If this policy had become a binding obligation of this defendant, at the time of the fire, then the liability of the Pennsylvania upon its $2,500 policy was at an end: Arnfeld & Son v. Assurance Co., 172 Pa. 605.   Had the $2,500 policy of the Pennsylvania Co. been canceled? If it had the assured knew nothing about it until after the fire occurred.   The question must therefore turn upon the authority of Brightman to consent, on behalf of the assured, to a cancellation of the policy.   There was no evidence that Brightman had ever received any oral instructions or grant of authority from the plaintiff; the testimony was, on the contrary, direct, explicit and uncontradicted that all communications between the parties had been in writing, and the correspondence was of-

fered in evidence.   This being so the question of Bright-man's authority to cancel the policies, which he had de-livered to the assured and for which he had been paid, was a question of law for the court.   It is unnecessary to inquire what Brightman might have been authorized to do while Mr. Shipley was living, for Mr. Shipley had died, in April, before these policies were issued.   A power, not coupled with an interest, is revocable, and the death of the principal strikes down the power of the agent.   The evidence as to the course of dealing between Brightman and Mr. Shipley during the lifetime of the latter, was properly excluded, and the first and second specifications of error are overruled.   If Brightman had authority to bind this plaintiff, as executor, and cancel a policy of insurance without consulting the assured, it can only be because the plaintiff, as executor, had clothed him with that power.

The letters of the plaintiff to Brightman did authorize him to obtain policies of insurance, to take the place of those expiring on May 17, 1908, to the amount of $34,000. He had procured the amount of insurance thus authorized, had delivered the policies to the plaintiff and had received payment of the premiums.   There is nothing in any of the letters conferring upon him any authority to further deal with the subject.   The purpose of the agency was accom-plished, the transaction closed and the powers of the agent with regard to the subject-matter at an end: Standard Leather Company v. Insurance Company, 224 Pa. 178. There was in this case not a scintilla of evidence tending to show that the trust company, as executor, had delegated to Brightman a general authority to deal with the insurance upon the property in question.   Brightman attempted to cancel the Pennsylvania policy without authority from the assured, the assured had not ratified the act before the loss occurred, and before there was an opportunity to ratify it the defendant company notified the assured that it repudiated the transaction; this it had a right to do : McClintock v. South Penn Oil Co., 146 Pa. 144.   This

was clearly a case where a man who happens to be agent for two insurance companies attempts to shift responsibility from one to the other, without the assent of the assured, and is ruled by Lancashire Insurance Co. v. Nill, 114 Pa. 248. The policy in suit had not become a binding obligation of the defendant company at the time of the loss.

The judgment is affirmed.