LaFrance Workshop Lampshade Co., Inc. *v.* Fire Assn. of Philadelphia, Appellant.

Argued October 3, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Horace Michener Schell* and with him *Arthur S. Arnold,* for appellant.

*W. Horace Hepburn, Jr.,* for appellee.

OPINION BY BALDRIGE, J., March 3, 1934:

The plaintiff instituted eight actions in assumpsit against various fire insurance companies to recover losses from a fire which occurred on February 26, 1931. The cases were tried together and a verdict in each case was rendered for plaintiff. The appeals that followed involve similar facts and principles of law. Our disposition of this appeal will control the other cases.

All the policies covered machinery, equipment and merchandise in the plaintiff's factory buildings located at Clifton Heights, Delaware County, Pennsylvania. The defense to the payment of the losses was twofold: (1) that the policies were not in force, having been cancelled before the fire; (2) fraud and false swearing as to the amount of loss subsequent to the fire. The learned court below instructed the jury that the policies had not been legally cancelled, but were in force and effect at the time of the fire; and submitted to the jury three questions: (a) was the plaintiff entitled to recover? (b) if so, what was the actual cash value of the goods insured immediately before the fire? (c) what was the amount of damage done, for which the plaintiff should recover? The jury found that the value before the fire was $63,878, and that the plaintiff suffered a loss of $38,000.

The plaintiff sought to recover under a policy of $5,000, which we are now considering, the sum of $3,-

714.28, with interest from April 26, 1931. The court, by agreement of counsel, applied the 90% co-insurance clause to the finding of the jury and fixed the defendant's liability, in this case, at $2,415.48, for which judgment was entered.

The main question before us is whether Lare and Company, plaintiff's agents, were acting within the scope of their authority in surrendering the policies for cancellation. It appears from the testimony of Albert H. Bien, president of the plaintiff company, that William A. Levick had been the plaintiff's accountant since 1925, and that he was also engaged in the insurance brokerage business since 1926 with Martin F. Lare, trading under the firm name of Lare and Company; that about the time of Levick's employment by plaintiff company, he obtained some insurance for it, and that thereafter when he examined plaintiff's books from time to time, he and Lare would recommend that more insurance be taken. The plaintiff, having confidence in them, followed their advice. In the witness' words: ''[Levick] kept asking me, if you give me all your insurance I will cut your rate down, and I kept giving it to him little by little until he got all my insurance.'' Bien suggested, in the fall of 1930, that the plaintiff company should have $50,000 insurance, but Levick advised him that more was needed, and he was finally directed to obtain $75,000. He put a binder on for 60 days and told Bien that if he would follow his instructions and make certain changes, he could probably save him 25% in premiums; the alterations suggested were made. Lare and Company placed the insurance in litigation with O'Neill & Sons, ''policy-writing agents'' of all the defendant companies. The policies were delivered in November, 1930, by O'Neill & Sons to Lare, who retained possession of them to get a reduction in rates. Bills accompanying the policies for premiums were in

the name, of and charged to Lare and Company, who, in turn, charged them to the plaintiff in an open account which contained items for premiums on other policies obtained for plaintiff, some of which had remained unpaid for about a year. Thus, it appears that O'Neill and Sons extended credit to Lare and Company, but not to plaintiff.

Lare testified that he had entire charge of all insurance connected with plaintiff's business; that it had been his practice to renew the former policies when they expired, or, if the companies cancelled them, to get new policies, without awaiting any instructions or approval from Bien, although he never cancelled a policy of the insured without its consent, except the policies in suit; that he prepared all the forms, determined the amount of insurance, and selected the companies.

The plaintiff company was indebted to Lare and Company in the sum, of $2,600, which included premiums of $1,100 on the policies in suit. Lare testified that he asked the plaintiff several times for money and was "put off until a future time;" that he notified Bien that unless he paid the premiums by the 20th of February, 1931, he would have to return the policies, as O'Neill and Sons had been demanding payment of the premiums; that Bien agreed to send him a check on or before that date; but he failed' to do so, and on February 21st Lare returned the policies to O'Neill and Sons and they were cancelled by the defendants.

Was this cancellation binding on the plaintiff? The answer depends mainly upon whether Lare and Company were general agents. Joyce, in his work on Insurance, §639 (a), defines "General Agency" in the following language: "The authority conferred upon agents or brokers by insured, or the nature of their employment, may be such as to enable them to accept

notice of cancellation which will bind assured. And such notice may be given to a general agent of the assured. Thus, if a broker has been accustomed to act as general agent in regard to matters of insurance for another, and is vested with discretionary powers in relation thereto, and the company charges the broker with the premium, and the policy remains in its hands, notice of cancellation to such broker is sufficient; so where a broker is authorized to keep the owner's property insured by taking out policies, renewing them, paying premiums thereon for the owner and obtaining other insurance in lieu of expired or canceled policies and said course of dealing has been carried on for some time, the broker is a general agent of the owner in said matters and the owner is bound by notice of cancellation given to said broker." In 26 C. P. p. 144, §168, this rule is expressed in the following language: "A general insurance agent or broker authorized by insured to keep his property insured and to select the insurer may act for insured in waiving notice of, and consenting to, a cancellation." See, also, Edward v. Home Ins. Co., 100 Mo. App. 695, 709, 73 S. W. 881; Orkin v. Standard Fire Ins. Co., 99 N. J. L. 114, 116, 172 A. 823; Northern Assurance Co. v. Standard Leather Co., 165 F. 602. In Standard Leather Co. v. Ins. Co., 224 Pa. 178, 183, 73 A. 216, Judge SHAFER, in his opinion, which was affirmed by the Supreme Court per curiam, stated that a notice of cancellation might properly be given to one who was a general agent to procure insurance for his principal, with a general authority to procure insurance up to a certain amount, and entire discretion as to the company's rates of premiums and amounts of policies, etc., especially if the entire line of insurance has not been obtained. The learned court below held that this case did not apply as in the instant case all the insurance was procured and the agent's engagement was com-

pleted. Bien testified that $75,000 insurance had been procured, but the plaintiff's statement averred that $70,000 had been obtained, and the policies offered in evidence aggregated only that amount. The placing of the total amount of insurance was not, therefore, proven conclusively, and if the contract was not completed, the right to cancel, as well as to receive notice of cancellation from the companies, was undoubtedly within the authority conferred upon Lare and Company. See Lavoie v. North British & Mercantile Ins. Co. et al., (N. H.) 161 A. 376, 162 A. 182.

True, express authority to cancel was not proven, but it was not necessary so to do if the principal relied upon the judgment of its agent in placing and exchanging insurance; allowed Lare to determine the forms and amounts of the policies; and gave him all other essential authority relative to the plaintiff's insurance; then a general agency was created and the principal impliedly, if not expressly, granted to its agent all power incident to the purpose of the agency: Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396. "Implied agency is actual agency, and the difference between it and express agency is mainly one of method of proof; accordingly it is immaterial whether or not the third person had knowledge of the circumstances relied upon to establish the extent of the authority": Dobbs, Exr. v. Zink et ux., 290 Pa. 243, 248, 138 A. 758. See, also, Rossi v. Firemen's Ins. Co., 310 Pa. 242, 165 A. 16.

Furthermore, it could be legitimately inferred from plaintiff's failure to pay the amount of premiums after receiving express notice, without protest, that the policies would be cancelled on a certain day, that the plaintiff consented to their cancellation. The principal could very easily have objected to the exercise of this authority by its agent if it had so desired. "Acquiescence by the principal in conduct of

an agent whose previously conferred authorization might reasonably include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance'': Section 43, Restatement of Agency. Certainly Lare and Company were not compelled to keep on incurring liability when the insured, after due notice, had failed to discharge its part of the contract. True, the testimony of Lare that he gave notice, and that Bien promised to pay, was contradicted by the latter. That was an issue of fact, however, for the jury.

Under the evidence, general authority, in connection with the placing, etc., of plaintiff's insurance was given to Lare and Company; the line of insurance it had been empowered to place was not completed; and express notice was given by Lare to Bien of his intention to cancel policies if premiums were not paid. We are of the opinion, therefore, that it was for the jury to determine whether plaintiff's broker or agent (the name is not material as it is the power given, not the name, that controls) had authority to surrender the policies for cancellation.

It is unnecessary to discuss the second defense that the plaintiff was guilty of fraud and false swearing as to the amount of loss subsequent to the fire, as, in our judgment, that was an issue of fact and was fairly and adequately submitted to the jury. See Williams et al. v. Southern Mutual Ins. Co., 312 Pa. 114, 166 A. 582.

Judgment is reversed with a venire.