Faramelli et al. *v.* Potomac Insurance Company, etc., Appellant.

Argued December 3, 1942. Before Schaffer, C. J.; Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Daniel Mungall, Jr.*, with him *Stradley, Ronon, Stevens & Young,* and *O'Malley, Hill, Harris & Harris,* for appellant.

*Stanley F. Coar,* with him *Gerard O'Malley* and *Russell J. O'Malley,* for appellees.

OPINION BY MR. JUSTICE PARKER, January 4, 1943:

By the pleadings and by stipulations of the parties made at the trial of this cause before a judge without a jury, the issue was narrowed to a question as to which of two insurance companies was liable to plaintiffs for a loss occasioned by the destruction of their frame building by fire. The court below entered judgment against The Potomac Insurance Company and that company has appealed. The judgment must be affirmed.

On May 1, 1937, the Bovard Agency, an agent authorized to solicit risks, collect premiums and issue or countersign policies of insurance for Potomac Insurance Company, issued for that company a $2,000 policy on plaintiffs' building and a $1,000 policy on furniture and fixtures belonging to some of the plaintiffs. On October 28, 1937, it also issued a policy in the same company to one of plaintiffs, Etalo Faramelli, for $1,000 on his household furniture.

Early in November, 1937, the Bovard Agency was instructed by defendant to cancel the three policies. On November 17, 1937, that agency prepared and signed three policies for the same amounts in the National Union Fire Insurance Company of Pittsburgh, for whom it was also agent, intended to take the place of the policies in the Potomac. The new policies were not delivered to the insured and plaintiffs were not notified of the cancellation or the issuing of the new policies until after November 22, 1937, when a fire occurred which totally

destroyed the property. The following day, Vendal Bovard of the Bovard Agency went to the premises and delivered the new policies to Etalo Faramelli, one of the plaintiffs, who took the policies and retained them.

Bovard then asked for the Potomac policies. After stirring around among the rubbish from the fire they found one of the policies and a portion of another. Bovard took with him these two policies and a lost policy receipt signed by Faramelli for the one partially destroyed. That paper acknowledged receipt of the return premium but it was not in fact paid to the plaintiffs or any of them. The policy on the building, the one here involved, was in the hands of the Bovard Agency for the purpose of making the insured named in the policy correspond exactly with the true ownership, there being some question as to whether the spouses of three heirs should be included.

Proofs of loss were made with reasonable promptness on all six policies and the two insurance companies were advised of the situation. Suits were then begun on all six policies and by agreement all the cases were tried at one time before the same judge, but plaintiffs claim the right to recover from only one company.

The appellant argues, first, that Bovard Agency was the general agent of plaintiffs with authority to keep them insured at all times which included authority to waive the terms with reference to cancellation of the policies which had been delivered, consent to the immediate cancellation of the Potomac policies, and accept policies in the National Union in lieu thereof; and, second, that in any event plaintiffs after the fire ratified the actions of Bovard.

What was the extent of Bovard's authority to act for plaintiffs? We will summarize the facts from which the authority of Bovard to represent plaintiffs must be inferred. Bovard, for several years, had provided the insurance on the building for the parent of three of plaintiffs. When ownership changed by death, Faramelli, one

of plaintiffs, saw Bovard and told him that they wanted insurance on the building and wished that agency to secure it in one of its companies. Bovard explained what insurance would cost and wrote and delivered three policies including the one on the building. When the policies expired in 1937 Faramelli again saw Bovard and had the insurance renewed, but the policies were changed from the Home Insurance Company to the Potomac. The plaintiff Faramelli admits that he looked to Bovard to keep him "insured all the time". In view of the fact that appeals are pending in the Superior Court involving remaining policies and as our conclusion will not be affected, we will assume that Faramelli in his dealings with Bovard represented not only his wife but the remaining four plaintiffs in this action.

In determining the scope of Bovard's authority to represent plaintiffs it must be taken into account that Bovard was primarily the agent of the companies for whom it was authorized to solicit risks, collect premiums and to issue or countersign policies: See Act of May 17, 1921, P. L. 789, §§601, 605, as amended (40 PS 231, 235). It will also be noted for reasons later to be shown that the Insurance Department Act of 1921 recognizes a class known as "insurance brokers" (See §621) who are not agents of the interested company and must be licensed as such and that such broker is primarily the agent of the insured.

It is clear that Bovard was the agent of Potomac as well as the agent of insured for a specified purpose. Ordinarily one cannot serve two masters in the same matter. This rule, however, is a general one and "has no application where the duties of the agent to the two principals are of such nature that there can be no conflict between his duty of loyalty to the one and his duty of loyalty to the other": *Rossi v. Firemen's Ins. Co.*, 310 Pa. 242, 248, 165 A. 16. If Potomac had cancelled its policy or the policy for other reasons had ceased to protect the insured, then under its authority to keep the property in-

sured Bovard would have had the right to cancel the Potomac insurance and place the substituted insurance for the plaintiffs in the National Union: *Rossi v. Firemen's Ins. Co.,* supra. In that case the insurance agent who placed the insurance for the owner was instructed to see that the property was insured at all times. He procured a new policy when the first insurer became insolvent and a receiver was appointed, thereby cancelling the policy. We held that the agent acted within his authority.

Here Bovard undertook to do much more, for Potomac had not cancelled its policy; it merely directed its agent to comply with the terms of the policy and then cancel it. The Potomac policy required five days written notice to the insured before the policy could be cancelled. Bovard made two attempts to notify plaintiffs before the fire but failed to find them. The Bovard Agency did not do what it was instructed to do, but without notice to the plaintiffs and without authority from them attempted to cancel the policies. Bovard's power was limited to keeping the property insured. The Potomac policy was good until it expired or was cancelled according to its terms. Bovard failed to comply with the instructions of its principal, Potomac, and attempted to act for plaintiffs without authority. One who happened to be agent for two insurance companies attempted to shift responsibility from one to the other without the consent of the insured when he had neglected to obey the instructions given him by the insurance company for whom he was acting: *Provident L. & T. Co. v. Spring Garden Ins. Co.,* 53 Pa. Superior Ct. 66, 74.

To effect the cancellation of an insurance policy the conditions incident to the right to do so must be strictly complied with: *Pomerantz v. Mutual Fire Ins. Co.,* 279 Pa. 497, 124 A. 139; *Scheel v. German-American Insurance Co.,* 228 Pa. 44, 76 A. 507. An insurance agent who insures a party in one of his companies has no general authority to cancel the policy and substitute another

therefor unless specifically authorized so to do: *Jones v. Dubuque F. & M. Ins. Co.*, 317 Pa. 144, 146, 176 A. 208.

Bovard was not the *general* agent of insured and the lower court so held. This is peculiarly so since it was primarily the licensed agent of the insurer. It is more reasonable to infer authority to cancel an insurance policy where the alleged agent of the insured is an insurance broker who is primarily the agent of the insured than where the policy writer is primarily the agent of the insurer. Many of the expressions in opinions relied upon by appellant may be differentiated when the fact is noted that in those cases the agent who undertook to act for the insured was a broker and not a "policy-writing agent". In *LaFrance Lamp. Co. v. Fire Assn. of Phila.*, 112 Pa. Superior Ct. 599, 171 A. 127, and *LaFrance Lamp. Co. v. Buffalo Ins. Co.*, 318 Pa. 191, 178 A. 1, relied upon by the defendant, the agent who was held authorized to cancel a policy for the insured was an insurance broker and the general agent of the insured. Such cases have no application to the facts in this case.

Did the insured after the fire ratify the action of Bovard in attempting to cancel the Potomac policy and substitute the policy of the National Union? Bovard states that within a few hours after the fire he had a conversation with Faramelli in which he said: "Well, I told him that the policies had been canceled and that I had substituted them in another company." On the strength of that statement Faramelli received and held the policies in National Union and gave Bovard the remnants of two of the policies in Potomac. Bovard did not tell Faramelli that he had on his behalf waived notice of and agreed to cancellation.

Plaintiffs are described by the trial judge as "more or less ignorant Italian people who are unacquainted with business and not well acquainted with the language". The plaintiffs immediately consulted an adjuster and counsel and notified the National Union of the facts. They were entirely within their rights in holding the

policies until it was determined which insurance policies were in fact binding. They received the policies from Bovard who was agent for both Potomac and National Union. It would seem that the mere statement of these facts would be sufficient to show that there was not a ratification.

However, this branch of the case is ruled by *Lancashire Ins. Co. v. Nill*, 114 Pa. 248, 6 A. 43. There the insured had a fire insurance policy in the Clinton Insurance Company. A fire occurred on August 9, 1882. On the 11th the husband of the insured went to the office of the policy-writing agent and was told that about August 1st the Clinton Company had ordered its policy cancelled and that he had issued one in Lancashire, the defendant, in its stead. The husband then surrendered the Clinton policy and took the Lancashire policy home with him. Plaintiff sued the Lancashire Company. It was there said: "It requires no argument to show that this could not be done, and that the attempt to accomplish a design of this kind was a fraud on the defendant [the substituted insurer]." To the same effect is *Provident L. & T. Co. v. Spring Garden Ins. Co.*, supra.

Judgment affirmed.